## JOHN T. PORTER CO. et al. v. JAVA CO-COANUT OIL CO., Limited.*

(Circuit Court of Appeals, Ninth Circuit. February 16, 1925. Rehearing Denied March 16, 1925.)

No. 4139.

**I. Corporations ⚖=123(5)—Burden of proof to establish priority of pledge on pledgee.**

In a suit by the purchaser of shares of bank stock at execution sale against a pledgee of the former owner to enjoin its sale under the pledge, on proof by complainant of his title as general owner, the burden rested on pledgee to establish the validity and priority of its pledge.

**2. Appeal and error ⚖=1011(1)—Findings of fact on conflicting testimony will not be disturbed.**

Findings of fact by the trial court, based on conflicting testimony taken in open court, will not be disturbed on appeal.

**3. Appeal and error ⚖=151(2) — Disclaiming defendants held to have right of appeal.**

Banks which are brought into a suit for the purpose of requiring them to issue new certificates of stock to complainant, as purchaser under an attachment levy, and who disclaim any interest in the ownership of the stock and offer to abide the decision of the court, are nevertheless directly affected by a decree requiring them to pay to complainant dividends which they had previously paid to others, and may appeal therefrom.

**4. Attachment ⚖=178—Attachment of shares of stock held to create lien on after-declared dividends.**

Under Code Civ. Proc. Cal. § 541, providing that shares of stock in a corporation, "together with the interest and profit thereon," shall be subject to attachment, an attachment of stock creates a lien on after-declared dividends.

**5. Equity ⚖=427(3)—Bill held not to authorize money decree against certain defendants.**

Where a bill filed by a purchaser of bank stock, sold under an attachment, to restrain a sale of the stock by a pledgee, made the banks parties, but the only relief prayed against them was that they be required to transfer the stock to complainant on their books, a decree against them for the amount of dividends accrued after the attachment, and which they had previously paid to others, was not authorized under the prayer for general relief.

Gilbert, Circuit Judge, dissenting.

*Certiorari denied 45 S. Ct. 515, 69 L. Ed. ——.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California.

Suit in equity by the Java Cocoanut Oil Company, Limited, against the John T. Porter Company and others. Decree for complainant, and defendants appeal. Affirmed in part, and reversed in part.

H. C. Wyckoff and Wyckoff & Gardner, all of Watsonville, Cal., for appellants Pajaro Valley Savings Bank and Pajaro Valley Nat. Bank.

Warren Olney, Jr., J. M. Mannon, Jr., A. Crawford Greene, all of San Francisco, Cal. (John F. Cassell, of San Francisco, Cal., of counsel), for appellants John T. Porter Co., Fanny C. Porter, Florence Porter Pfingst, and Edward Porter Pfingst.

Pillsbury, Madison & Sutro, Alfred Sutro, and Eugene M. Prince, all of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. By an instrument in writing, bearing date April 26, 1920, Warren R. Porter pledged to the John T. Porter Company 120 shares of the capital stock of the Pajaro Valley Savings Bank and 60 shares of the capital stock of the Pajaro Valley National Bank to secure the payment of his indebtedness to the Porter Company, amounting to the sum of $19,000, evidenced by a promissory note bearing date December 12, 1919. The original date of the note was December 12, 1920, but this was changed to December 12, 1919. On the 14th day of September, 1920, both blocks of stock were attached by the United States marshal for the Northern district of California, under and by virtue of a writ of attachment, issued out of the District Court of the United States for that district in a certain action therein pending, wherein Warren R. Porter was plaintiff and plaintiff herein was defendant. On the 25th day of January, 1922, the plaintiff herein became the purchaser of the stock of the two banks at an execution sale under a judgment in favor of the defendant and against the plaintiff in the action wherein the writ of attachment issued. On the 27th day of January, 1922, the Porter Company served written notice on the plaintiff herein that it would sell the stock of the two banks under and by virtue of the pledge agreement to satisfy the indebtedness of Warren R. Porter to that company.

The present suit was thereupon instituted to enjoin the sale under the pledge agreement, for a decree adjudging the plaintiff the owner of the stock in the two banks, for a mandatory injunction commanding the two banks to issue certificates to the plaintiff for the stock so purchased, and for general relief. Upon final hearing the court, by its decree, adjudged that the plaintiff was the owner of the stock in controversy, enjoined the sale under the pledge agreement, granted a mandatory injunction commanding the banks to issue certificates to the plaintiff for the stock in the respective banks, and further commanding the banks to pay to the plaintiff all dividends declared or made payable on the stock after the levy of the writ of attachment on September 14, 1920. From this decree the defendants have appealed, and for convenience the parties will be designated here as in the court below.

[1] The sole issue in the case, as presented at the trial, was the question of priority between the attachment levy and the pledge agreement. The court below determined that issue in favor of the plaintiff, and in so deciding ruled that the burden of proof was on the defendants to establish the priority and validity of the pledge. The ruling of the court imposing the burden of proof on the defendants is now assigned as error by them, and they further contend that they were entitled to prevail on the facts regardless of the question of the burden of proof. After setting forth the title of the plaintiff under the execution sale, the complaint averred on information and belief that the defendant Porter Company had no right, title, or interest in the stock, as pledgee or otherwise, and averred on like information and belief that the defendants had conspired together, to the end that the Porter Company would assert a pledge of the stock for the purpose of defrauding the plaintiff. After denying the foregoing allegations, the answer of the defendants set forth affirmatively the claim of the Porter Company under the pledge agreement.

Such was the issue presented by the pleadings. If both parties were here claiming title to the same property, the one under an assignment from the owner and the other under an execution sale against him, it may well be that the burden of proof would rest upon the plaintiff to establish its title by a preponderance of the testimony, because ordinarily a plaintiff must recover on the strength of his own title, and not on the weakness of that of his adversary. But a different situation was here presented; for, notwithstanding the pledge or the date of the pledge, the general property in the stock remained in the pledgor, and that general property passed to the plaintiff by the execution sale. The general owner of the property was claiming it as against one who claimed only a special property therein, or a lien thereon, and in such cases the claim of the general owner will prevail, unless the one claiming the special property, or lien, establishes his claim by a preponderance of the testimony. The rule as to the burden of proof is one of substance, and not of form. It does not depend upon the alignment of the parties, the manner in which they were brought before the court, or the form of the pleadings. For these reasons the general owner of the property was entitled to prevail, unless the special owner established his claim, or pledge, and the court below did not err in so ruling.

We will next consider briefly the sufficiency of the testimony to support the decree. There were but two witnesses to the execution of the pledge agreement, and there was no direct contradiction of their testimony. Both of these witnesses were interested in the result of the suit. Of course, the court would not be warranted in arbitrarily rejecting their testimony for that reason alone, nor was the court compelled to accept it implicitly. It was the duty of the court to weigh their testimony in the light of all the testimony in the case, and give to it such consideration as it was entitled to under all the circumstances. A reference to the opinion of the court below shows very clearly that the latter course was pursued. It is claimed on the one hand that the two witnesses were corroborated, and on the other hand that they were discredited and impeached. No doubt there is a presumption that an instrument was executed on the date it bears, as claimed by the defendants; but the presumption is easily overcome. The same presumption attached to the promissory note which the pledge was given to secure, yet it is conceded on all hands that that note was not in fact executed on the date it bears. There was testimony to the effect that third persons had been informed of the pledge before the present litigation arose; but, aside from the inherent weakness of that class of testimony, the court below rejected it as unworthy of belief. It is further claimed that the witnesses were corroborated by entries in the books of the Porter Company.

[2] On the other hand, there was testimony tending to show that the date of

the Porter note was not changed' at the time of its execution as claimed; that there were erasures and alterations in the books of the Porter Company; that there was a failure on the part of the Porter Company to report the pledged stock for the purposes of taxation; that there was no reference to the pledge of the stock in a report made to the United States marshal on October 2, 1920, by one of the witnesses to the execution of the pledge agreement, while his later report made reference to the pledge; that dividends on the stock were paid to the pledgor for some time after the execution of the pledge, and many other circumstances are referred to, which it is claimed corroborated or impeached the testimony of the two witnesses. But, without going into further detail, we think it is apparent, from what we said, that the question involved was purely one of fact for the consideration of the trial court, and that the findings of that court, based on conflicting testimony taken in open court, will not be disturbed on appeal. Boss v. United States (C. C. A.) 290 F. 167; Taylor v. Nevada Humboldt Tungsten Mines Co. (C. C. A.) 295 F. 112.

The complaint in the case made no reference to dividends declared or paid on the stock subsequent to the levy of the attachment, nor was any such reference contained in the prayer, unless included in the prayer for general relief. By their answer the two banks disclaimed any interest in the stock and expressed a willingness to issue new certificates to and in the name of such person as might be determined to be the owner thereof, upon surrender of the old certificates properly indorsed, and "to abide by and conform to such final judgment and order respecting the disposition of said stock as may be made in this action." As already stated, the final decree awarded a mandatory injunction commanding the two banks to issue to the plaintiff new certificates for the shares of stock in question, and also a like injunction commanding the banks to pay to the plaintiff, within five days after the service of the writ, all dividends declared or made payable on the stock since the 14th day of December, 1920. From this part of the decree the two banks have appealed.

[3] Having filed a disclaimer in the court below, the plaintiff contends that the banks have no interest in the appeal, and no right of appeal. This contention cannot be sustained, unless the banks are unaffected by the decree or have consented thereto. That they are directly affected by a personal decree against them for the payment of money does not admit of question, and their mere consent to abide by and conform to a decree respecting the disposition of the stock was not, in our opinion, a consent to a decree against them for dividends already paid to others. The objection to this portion of the decree is twofold: First, because the attachment levy did not reach or create a lien on after declared dividends; and, second, because the complaint was not broad enough to warrant or authorize any such relief.

[4] The first question is one of local law. Section 541 of the Code of Civil Procedure of the state provides: "The rights or shares which the defendant may have in the stock of any corporation or company, together with the interest and profit thereon, and all debts due such defendant, and all other property in this state of such defendant not exempt from execution, may be attached, and if judgment be recovered, be sold to satisfy the judgment and execution." It was held by the District Courts of Appeal, in McCarthy Co. v. Boothe, 2 Cal. App. 170, 83 P. 175, and Cates v. Consolidated Realty Co., 25 Cal. App. 531, 144 P. 301, that the right to dividends inheres in shares of capital stock, is held under a levy of attachment on the shares, and passes to the execution purchaser of the shares attached.

The banks contend that these decisions are not controlling here for two reasons: First, because the decisions are mere dicta; and, second, because the District Courts of Appeal are not courts of last resort. We cannot agree with the contention that the decisions are mere dicta, nor need we inquire whether the decisions of an intermediate court are controlling in the federal courts, as was held in Re Gilligan, 152 F. 605, 81 C. C. A. 595, or are merely persuasive, as held in Federal Lead Co. v. Swyers, 161 F. 687, 88 C. C. A. 547, and Westerlund v. Black Bear Mining Co., 203 F. 599, 121 C. C. A. 627. In any event, the state decisions would seem to construe the statute correctly and are supported by authority. Jacobus v. Monongahela Nat. Bank (C. C.) 35 F. 395; Loewe v. Savings Bank of Danbury, 236 F. 444, 149 C. C. A. 496, L. R. A. 1917B, 938.

[5] The sufficiency of the complaint to support this part of the decree presents a question of greater difficulty. No doubt, as claimed by the plaintiff and as said by the Supreme Court in Lockhart v. Leeds, 195 U. S. 427, 436, 25 S. Ct. 76, 79 (49 L. Ed. 263): "There is nothing in the intrica-

cy of equity pleading that prevents the plaintiff from obtaining the relief under the general prayer, to which he may be entitled upon the facts plainly stated in the bill. There is no reason for denying his right to relief, if the plaintiff is otherwise entitled to it, simply because it is asked under the prayer for general relief and upon a somewhat different theory from that which is advanced under one of the special prayers."

But the question still remains: Are facts plainly stated here authorizing the recovery of dividends when the complaint itself is entirely silent upon that subject? The only decision called to our attention, which seems to be directly in point, is Georgia S. & F. Ry. Co. v. Einstein, 218 F. 55, 133 C. C. A. 657, from the Circuit Court of Appeals for the Fifth Circuit, where the court said:

"We cannot agree with the District Court in that portion of the decree which contains a money decree against the Georgia Southern & Florida Railway Company for the dividends paid on the stock after suit brought. The only relief prayed against it in the bill of complaint was to have the stock claimed transferred on the books; no prayer to restrain it from paying any further dividends, etc. The prayer for general relief must be construed in connection with the prayer for special relief, and the case made by the bill of complaint. The whole frame of the bill and its allegations treated the defendant railway company as having no interest in the controversy between the parties as to the ownership of its stock. The stock had been issued and delivered in payment for the properties conveyed to it, and there its interest terminated. It set up in its answer that it had no interest in the controversy, and alleged its readiness to perform any decree of the court to effectuate a transfer of said stock. This view seems to have been accepted by the parties to this suit up to the making of the final decree herein, as is clearly shown by the preamble, as it were, to the answer of the corporation found on page 105 of the record filed in this court. The corporation was a proper and necessary party to effectuate the transfer of the stock on its books, should that be decreed, and it was this fact that gave the court jurisdiction of this case, and was made a party defendant for that purpose, and that alone, as shown by the allegations of the bill of complaint and the prayer. Under such circumstances the prayer for general relief has never been, so far as our investigation has gone, construed to warrant a money decree, as was entered in this case."

Certiorari was denied. 239 U. S. 643, 36 S. Ct. 164, 60 L. Ed. 483. For the reasons there stated, the complaint in this case does not sustain the decree against the banks for dividends declared and paid since the levy of the attachment. This particular objection does not seem to have been called to the attention of the court below, by the petition for a rehearing or otherwise, and it seems an idle formality to reverse a decree for the purpose of allowing an amendment to the complaint to be followed by a similar decree; but, if the complaint does not support the decree, no other course is open to us.

Accordingly the decree is affirmed in all respects, except as to the personal judgment against the banks, and in that regard the decree is reversed, and the cause is remanded to the court below for further proceedings in accordance herewith.

Affirmed in part, and reversed in part.

GILBERT, Circuit Judge (dissenting). The court made no finding of fact. Confronted upon the one hand with the positive testimony of witnesses who had knowledge of the facts, and upon the other by circumstantial evidence apparently inconsistent therewith, the court was unable to decide that the one outbalanced the other, and rendered a decree for the appellee upon the ground that the appellants had failed to sustain the burden of proof. Upon a careful consideration of the testimony I am wholly unable to assent to the proposition that the evidence so offered upon the part of the respective litigants stands in equilibrio. The witnesses for the appellants, while in the main they were interested parties, are unimpeached, and presumably are reputable persons entitled to credit. Their testimony is positive and direct, and they had first-hand knowledge of the matters of which they testified. Their evidence should receive credence as against the suspicious circumstances which are relied upon by the appellee, and which, for the most part, are explained.

Warren R. Porter was indebted to the Porter Company on an open account, which had been carried upon the company's books since 1913. It is not disputed that during that period he paid interest thereon, and it is shown that his last payment covered the interest to December 12, 1919. There is nothing improbable, or even suspicious, in the testimony that on January 16, 1920, he executed a note in payment of the account, or that in so doing he dated the note as of December 12, 1919, to which date the interest had been paid. It is not incredible or

improbable that in so doing he inadvertently wrote the current year 1920, instead of 1919. It is a significant fact, however, that on discovering the mistake he corrected it by drawing a pen through the 1920 and inserting above it the figures "1919."

It is the contention of the appellee that the note was drawn on December 12, 1920, and was thereafter fraudulently altered, so as to appear to have been made a year earlier. Two circumstances render this contention extremely improbable. In the first place, the date of December 12, 1920, fell on a Sunday, and it is not supposable that a promissory note would have been made on that date; in the second place, if the note was changed with a fraudulent intent, it is not conceivable that it would have been done by altering the date of the written instrument. The commonest impulse of prudence would have led to the execution of a new note. There is abundant corroborating evidence that the note was made long prior to December 12, 1920, and must have been made early in January of that year. The testimony of Warren R. Porter and the manager, the secretary, and the bookkeeper of the company was all to the effect that on April 26, 1920, Warren R. Porter pledged to the Porter Company the shares of stock in controversy here, and at or about the same time the open account of Warren R. Porter was changed on the company's books to bills receivable. I do not find it a suspicious circumstance that the entry of the indebtedness as a bill receivable was made originally on May 25, as of the date of April 30, 1920. The testimony of the bookkeeper apparently a candid witness is distinct and positive that the entries were made prior to June 1, 1920, and strong corroborative evidence of her statement is found in the sequence of the vouchers of the Porter Company. Voucher No. 2344 was entered May 15, 1920, voucher No. 2346 was entered June 1, 1920, and the intermediate voucher, No. 2345, which represents the entry of the $19,000 note as a bill receivable, must have been entered at an intermediate date, and certainly upon some date between May 15 and June 1.

One of the circumstances relied upon by the appellee is the failure of the Porter Company to list the note as a solvent credit in its return of taxable property possessed by it on the first Monday in March, 1920. That failure it seems to me is void of significance. On that date the note had not been entered upon the account of bills receivable. The manager of the Porter Company, who made the return, testified that it was never the custom to make returns of debts due, such as book accounts, and it was not the custom for the assessors to make inquiry as to debts due from others. "All they are interested in is the property enumerated on the sheet there." The sheet so referred to enumerated only items of real estate, and the manager testified that the sheet with the real estate listed thereon was made out and presented by the assessor with the question, "All of this is the property of John T. Porter Company?" to which the answer was returned: "Yes, it is." The fact, therefore, that the $19,000 note was not included in the return has no probative value to show that the note had not then been made; for, if it had not then been made, the obligation to list the $19,000 open account item would have been as great as an obligation to list a note for that amount. As a matter of fact, all stocks, moneys, and bank credits of the Porter Company were omitted from the tax return.

Attention is directed to Warren R. Porter's oaths of January, 1921, and January, 1922, as director of the Pajaro Valley Banks to the effect that he owned on those dates shares of stock of the par value required by the Bank Act, and that the same were not hypothecated or in any way pledged as security for any loan or debt. But those oaths seem to me to have an effect contrary to that which is claimed for them. If at those dates Warren R. Porter had not yet pledged the shares in controversy here, those shares would have been sufficient to qualify him as director; but the evidence shows, and it is not disputed, that in order to qualify him to take the oath of director on each of those dates he procured from Pfingst the transfer of ten shares belonging to the latter.

The fact that a dividend declared on the shares of stock in July, 1920, was paid to Warren R. Porter, and not to the pledgee, is referred to as indicating that at that date the shares had not been pledged. No reference was made to dividends in the contract by which the shares were pledged. Whether or not Porter was aware of the law that all dividends were payable to the pledgee does not appear. The payment to him charged him therewith as trustee for the pledgee (4 Thomp. Corp. § 4238), and the fact that he received it has but little value as evidence.

Perhaps the strongest circumstance tending to sustain the appellee's contention is that on October 2, 1920, the manager of the Porter Company answered the appellee's

garnishment, stating that there was on the books of the Porter Company one share of stock in the name of Warren R. Porter, and that no funds were due him by the company; whereas, on March 21, 1921, answering a later garnishment the manager stated that the Porter Company owned by way of pledge the shares of stock pledged as security for Warren R. Porter's note. To this it is to be said that as a matter of fact, if the shares had then been pledged, the Porter Company had at neither of those dates any property of Warren R. Porter which could have availed the appellee by the service of its writs. The shares of stock so pledged were of considerably less value than the sum which they were pledged to secure, and it is not unreasonable to assume that for that reason the manager may have answered the first writ as he did.

As against the direct testimony of unimpeached witnesses facts cannot be established by circumstantial evidence, even in a civil action, unless the circumstances are of such a nature and are so related to each other that no other conclusion can fairly or reasonably be drawn from them. Here the circumstances fall far short of that test. They do not rise above the rank of suspicious incidents.