### COATS et al. v. BARTON et al. *

Circuit Court of Appeals, Eighth Circuit.
April 2, 1928.

No. 7794.

1. **Appeal and error** ⟜733—**Assignments that decree is contrary to evidence and that court erred in holding held sufficient to invoke jurisdiction of appellate court.**

Assignments that decree is contrary to the evidence and that court erred in failing to hold as requested *held* sufficient to invoke jurisdiction

*Rehearing denied June 12, 1928.

of appellate court to hear and determine whether there was any serious mistake of fact or prejudicial error of law in findings and conclusions of lower court.

2. **Corporations** ⟜121(5)—**Presumption is that sales of stock and written assignments thereof were free from fraud, deceit, misrepresentation, and alleged abuse of fiduciary relation.**

Legal presumption is that sales of stock in corporation and written assignments thereof in consideration for cash payment and assumption of indebtedness to corporation were free from fraud, deceit, misrepresentation, and alleged fiduciary relation and its abuse.

3. **Appeal and error** ⟜1009(3)—**Adjudication of chancellor in equity case on conflicting evidence will not be disturbed, in absence of error of law or mistake of fact.**

In a suit in equity, where chancellor has considered conflicting evidence and made his findings and decree thereon, the presumption is that they are correct, and adjudication will not be disturbed, unless appellants make it clearly appear that an obvious error of law has been entered into or serious mistake of fact made.

4. **Corporations** ⟜121(5)—**Evidence in suit alleging fraud in sale of stock held to establish that stock was not of greater value than consideration received.**

In suit to recover against purchaser of stock for alleged fraud and deceit and abuse of fiduciary relation, evidence *held* to establish that stock at time of sale was not of a value equal to or greater than sum received for it at date of sale.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit by W. M. Coats and another against T. H. Barton and others. Decree of dismissal, and plaintiffs appeal. Affirmed.

W. T. Saye and J. K. Mahony, both of El Dorado, Ark. (H. S. Yocum and J. N. Saye, both of El Dorado, Ark., on the brief), for appellants.

Joe T. Robinson, of Little Rock, Ark. (Charles A. Frueauff, of New York City, and Robert C. Knox and Jeff Davis, both of El Dorado, Ark., on the brief), for appellees.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and MUNGER, District Judge.

WALTER H. SANBORN, Circuit Judge. From 1921 to December, 1924, the parties to this suit were engaged in the business of buying and selling oil and gas leases, producing and distributing oil and gas in the vicinity of El Dorado, Ark. The complainants in this suit, W. M. Coats and J. B. Sowell, and the defendant, T. H. Barton, formed an Arkan-

sas corporation in 1921, of which each of them owned one-third, and of which Barton was the president, Sowell the office man at El Dorado, and Coats the field operator. These three men were the directors of the corporation. Each of them invested in it $9,000. This corporation was never able to pay its obligations as they matured. It was in a languishing condition until in 1923, to escape bankruptcy, these parties formed another corporation, the Natural Gas & Petroleum Corporation, under the laws of the state of Delaware, capitalized this corporation at $3,000,000, with the par value of the shares at $10; 50,000 of these shares were owned by each of the three stockholders, and 150,000 shares were placed in the treasury of the corporation. They transferred to this new corporation all the property of the El Dorado Natural Gas Company, caused their new Petroleum Corporation to borrow $900,-000 secured by mortgages on the property of the corporation and the personal guaranties of payment of each of the three stockholders, and mortgaged all the property of the corporation to secure the bonds, whose payment was guaranteed by the three stockholders. This new corporation had the same experience as the old one; it was never able to pay its debts as they matured; it and its stockholders had tried in vain to borrow money on the credit of the corporation, having exhausted their individual means; the mortgagee was threatening to foreclose the mortgages upon its property; the stockholders had tried in vain to sell their stock, when in November, 1924, the defendant Barton bought the stock of the plaintiffs, borrowed $500,000 of H. L. Doherty & Co. upon a pledge of all the stock of the Petroleum Corporation, paid out of this borrowed money $100,000 in cash to each of the plaintiffs, released them from their guaranties of the mortgage notes of the corporation, and released them from their personal indebtedness of about $15,000 each to the corporation. By December 2, 1924, this transaction was closed, the purchase money of the stock was paid by Barton to the plaintiffs, and the stock of the plaintiffs was transferred by written assignments to Barton. Prior to this sale of the stock of the plaintiffs, Barton owned one-third of the stock of the Petroleum Corporation. His purchase and the plaintiffs' assignment of the other two-thirds invested him with the title to all the stock of the Petroleum Corporation, and all this stock he pledged to Doherty & Co. to secure his indebtedness to it for the $500,000 which he borrowed. Thereafter a new corporation,

the Natural Gas & Fuel Corporation, was formed by Barton and Doherty & Co., with a capital stock of 300,000 shares of no par value, one-third of which was issued to Barton and two-thirds to Doherty & Co., and the Petroleum Corporation transferred all its property to this new corporation.

About 18 months after the sale of their stock to Barton and their receipt of payment therefor, Coats and Sowell brought this suit in equity against Barton, Doherty & Co., and the other corporations that have been mentioned, alleged that at the time the plaintiffs sold and assigned their stock for $115,-000 each that stock was worth $4,000,000, that they had been deceived and defrauded by Barton into making their sales of their stock, and they prayed that those sales and their conveyances be set aside, that their interest in the property held by the Petroleum Corporation be restored to them, and that, if that was impracticable, that the court render a judgment against the defendants for $3,800,000.

The defendants answered the bill in equity of the complainants and therein denied all the allegations of fraud, deceit, fiduciary relation and abuse of it.

The charges of the plaintiffs, which were denied by the defendants in their answer, were that at the time of the sale of their stock to Barton he was the agent or partner to sell their stock and his own; that Barton had represented to them, when they made the sale, that he had made a sale of his own and their stock to Doherty & Co., and that to carry out that sale they must assign their stock to him, but Barton and Doherty & Co. had entered into a fraudulent and deceitful scheme to induce the plaintiffs to convey their stock to Barton, in the belief that Barton was selling his stock to Doherty & Co. at the same time and for the same price that they were selling theirs; that they did not know Barton was retaining his stock, and they averred that the consideration for their stock was shockingly inadequate, and that shortly after they made the sale their stock became very much more valuable than it was at the time the plaintiffs assigned their stock to Barton.

This case was heard and decided against the complainants by Hon. F. A. Youmans, United States District Judge for the Western District of Arkansas. On the petition of the parties he ordered that the oral testimony taken in the case be transcribed in questions and answers and incorporated in the transcript for appeal, and the written and printed evidence was all transcribed and embodied

in the transcript, and all this has been printed and is in the record before us.

After the case was submitted to the chancellor, he prepared and filed a clear and exhaustive statement of the claims of the parties, the substantial evidence on the decisive issue including copies of the controlling written evidence, and after full and patient consideration he closed his opinion with these words:

"The record evidence above quoted is undisputed. From that evidence alone it clearly appears that the allegations of the complaint are not sustained. Coats and Sowell are men of intelligence and experience. They were better informed with regard to the value of the property than Barton was. They were fully informed as to the indebtedness of the corporation and the pressing demands that were being made by its creditors. In the face of the documents signed by them, it is clear that they knew that they were selling their stock to Barton. They also knew that Barton was without means, and that it was necessary for him to use that stock to obtain money with which to pay for it. There was no deception and no concealment on the part of Barton. There is no proof to sustain the charge that Doherty and Barton entered into a collusive scheme to defraud Coats and Sowell of their property. The complaint will therefore be dismissed."

[1] In this court the counsel for the appellees challenge the appellants' assignment of errors, because it does not charge any error of law, as required by the rules and decisions of this court. But the complaint of the appellants is that the court was mistaken in its findings of the facts and its conclusions based thereon. That mistake, if it was made, was decisive of the issues in this case. The appellants' assignments, that "the decree is contrary to the evidence" and that "the court erred in not holding that the defendant, T. H. Barton, acted as agent for the plaintiffs in the sale of their stock in the Natural Gas & Petroleum Corporation," were sufficient in this case to invoke the jurisdiction of this court to hear and decide whether there was any serious mistake of fact or prejudicial error of law in the findings and conclusion of the court below, which we have quoted.

The title and ownership of the stock in the Petroleum Corporation which the complainants assigned to Barton, and for which each of them received $115,000 in November and December, 1924, rests upon their written assignments of that stock, which they made and delivered to Barton for the $200,000 in cash which Barton paid to them and the $30,-000 of indebtedness to the corporation which he released them from. They have never returned any portion of this consideration. Their claim in this suit to avoid those sales and the written assignments they made, and for other relief, is based on their denied allegations that Barton obtained them by fraud, deceit, misrepresentation, and abuse of his denied fiduciary relation as their agent to sell their stock at the same time and rate as his.

[2] The legal presumption was that those sales and written assignments were free from fraud, deceit, misrepresentation, and the alleged fiduciary relation and its abuse. That presumption was clear and strong, and unless it was overcome by evidence of fraud, deceit, or breach of the duty of a fiduciary, which was clear, unequivocal, and convincing (Mastin v. Noble [C. C. A.] 157 F. 506, 508; Atlantic Delaine Co. v. James, 94 U. S. 207, 24 L. Ed. 112; Maxwell Land Grant Case, 121 U. S. 325, 380, 7 S. Ct. 1015, 30 L. Ed. 949; U. S. v. Budd, 144 U. S. 154, 12 S. Ct. 575, 36 L. Ed. 384), it was the duty of the chancellor below to refuse to avoid them or to grant the other relief sought by the complainants. The clear and exhaustive opinion of the court below, which occupies 23 pages of the record before us, evidences the care and patience with which he discharged his duty. After this study and consideration he found that the complainants had failed to prove their charges and dismissed their suit.

[3] The complainants appeal to this court for a reversal of his conclusions. He heard the testimony and received all the evidence in this case, he enjoyed a far better opportunity than we can have to judge of the reliability of the witnesses and the truth of their statements, and it is an established rule of equity practice that, where in a suit in equity the chancellor, as in this case, has considered conflicting evidence and made his findings and decree thereon, the presumption is that they are correct, and, unless the appellants make it clearly appear that an obvious error of law has intervened, or a serious mistake of fact has been made in the consideration and decision of the issues in the case, that adjudication will not be disturbed. Thallman v. Thomas (C. C. A.) 111 F. 277, 283; Tilghman v. Proctor, 125 U. S. 136, 8 S. Ct. 894, 31 L. Ed. 664; Coder v. Arts (C. C. A.) 152 F. 943, 946, 15 L. R. A. (N. S.) 372; Wilson v. Sands (C. C. A.) 231 F. 921, 923; Fay v. Hill (C. C. A.) 249 F. 415, 419; Road Improvement Dist. No. 2 v. Mo. Pac. R. Co. (C. C. A.) 275 F. 600, 603.

We have read the evidence in the record

in this case, we have heard and thoughtfully considered the arguments and briefs of counsel, and are convinced that no influential error of law has intervened, and that no serious mistake of fact was made by the chancellor below in the hearing and decision of this case, and his decree must be affirmed.

[4] Nor are we convinced that there was or is any equity in the claim of the complainants that their stock in the Petroleum Corporation was of a value to them equal to or greater than the $230,000 they received for it when they sold it. Each of these plaintiffs had exhausted his financial means; each of them was indebted to the corporation for about $15,000; each of them had given his personal guaranty of the payment of the $900,000 mortgage indebtedness of the Petroleum Corporation; default had been made by that corporation in the payments due on these mortgage debts.

In the last days of October, 1924, while the negotiations between Barton and Doherty & Co. were pending in New York, Mr. Kropper appraised for Doherty & Co. the physical property of the Petroleum Corporation at $2,507,755, and gave a copy of his appraisal to Mr. Coats, who had accompanied him while he was making the appraisal. W. D. Prince, a certified public accountant, made an audit of the books of the Natural Gas & Petroleum Corporation at its request. He testified that his report made in May, 1924, showed the value of the stock of that corporation, December 31, 1923, to have been $144,621.43; that at a later date he brought his audit down to November 30, 1924; and that his report showed the value of its stock on that date to have been $460,970.04. He testified that according to his audit the Petroleum Corporation suffered a net loss of $67,751.52 in the year 1923, and made a net gain in the first 11 months of 1924 of $316,348.61. There was much testimony that the value of the property of the corporation was greater, and especially that in the years after Doherty & Co. bought the majority of its stock and managed the property it greatly increased in value.

But the situation at the time the plaintiffs sold their stock was a dismal one for the stockholders of the Petroleum Corporation. Barton, who spent much of his time in New York trying to borrow money, was in El Dorado in August or September, 1924, consulting with the plaintiffs, and trying to devise some scheme to escape foreclosure of the mortgages and insolvency of the corporation and themselves. Coats testified in answer to the question what the understanding was between the three stockholders as to what he was going back to New York for in September, 1924: "He was either going to try to pacify the mortgage notes that we had with Mr. Lubell, so we could go ahead and use the money we would receive to satisfy our local creditors, to sell the company outright, or any financial arrangement he could make." Answering a request to describe the condition of the corporation and its business, he testified: "Our pay rolls were lapsed from time to time; our laborers were not paid. You might say for the last two years we were in business our pay rolls were not paid all the time, and my men were suffering in the fields for pay checks; some of them were three months behind, had not drawn any money, and were unable to pay grocery bills. Part of the time the grocery bills were cut off. Many a time I have gone to the field and arranged with grocers for their groceries. Those were the conditions."

It seems to have been certain, at the time when Barton bought the stock of the plaintiffs, that if he had not done so, and had not paid for it with the money he was able to borrow upon all the stock of the corporation from Doherty & Co., the mortgages on the Petroleum Corporation would have been foreclosed, its stock would have become worthless, and the complainants would never have received the $115,000 each that they did receive, or any part of it, and that they would not have been released from their guaranties of the payment of the $900,000 mortgage debts of the corporation.

Let the decree below be affirmed.