## CLEMENTS v. COPPIN.
### No. 6703.

Circuit Court of Appeals, Ninth Circuit.
Nov. 3, 1932.

Rehearing Denied Jan. 16, 1933.

Thomas F. McCue and Clarence G. Atwood, both of San Francisco, Cal., for appellant.

Dinkelspiel & Dinkelspiel and David K. Lener, all of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This was a suit by the trustee in bankruptcy of the Flintex Corporation to recover the proceeds of an insurance policy issued on the life of one Ralph L. Clements, deceased husband of appellant, and at one time an officer of the bankrupt corporation. At the time the policy was issued, the Flintex Corporation was named as the beneficiary therein; but at the time of the death of Clements his estate had been substituted as beneficiary. The change of beneficiary was found by the trial court to have been fraudulently effected; as alleged by the trustee. The decree awarded the trustee that portion of the proceeds of the policy which had come into the hands of appellant individually and as administratrix of Clements' estate, and impressed the same with an involuntary trust, as prayed. The net proceeds of the policy due upon the death of Clements were paid to the original administrator of his estate, and from this sum appellant received $22,500 as an heir and approximately $6,000 when she was substituted as administratrix of the estate.

On a former appeal, this court reversed a similar cause for want of jurisdiction, because of the joinder of a party whose presence destroyed the element of diverse citizenship. See Matthew v. Coppin (C. C. A.) 32 F.(2d) 100. Appellant, in her individual and representative capacities, was the sole defendant on the second trial.

The findings of fact recite, substantially, that the Flintex Corporation was incorporated under the laws of the state of Ohio in December, 1923; that on January 2, 1924, Ralph L. Clements was elected to the board of directors; that on the same date, at the first

meeting of the board of directors, Clements was elected vice president and general manager of the company, and one Nan C. Kelly was elected secretary-treasurer; that in April, 1924, while Clements held such offices, the Flintex Corporation, for its benefit and protection, procured a policy of insurance upon his life in the sum of $75,000, and said corporation was the beneficiary thereunder; that the first annual premium on said policy was paid by the Flintex Corporation, and the second and last premium on the policy was also paid by the Flintex Corporation, by a loan from the insurance company, secured by a promissory note of the corporation; that in January, 1925, Clements was re-elected a director, together with John Douglas, Charles E. Douglas, A. D. Bullock, and Nan C. Kelly; that at the same time Clements was also re-elected vice president and general manager; that Nan C. Kelly was also re-elected secretary-treasurer of the company; that on June 30, 1925, at a special meeting of the board of directors of the Flintex Corporation, a certain contract was entered into between the corporation and Clements (hereinafter set forth), which contract was approved, ratified, and confirmed by resolution of the board of directors, and that thereafter, and at said meeting, Clements tendered his resignation as director, vice president, and general manager of the company, and Ralph J. Douglas was elected director in his place, and Charles E. Douglas, a director of the company, was elected vice president and general manager; that the minutes of the board of directors of the corporation recite that a regular meeting of the board of directors was held on July 8, 1925, at which meeting a resolution was introduced and adopted transferring and assigning the policy of life insurance in suit to Ralph L. Clements for $1 and other good and valuable consideration; that this alleged meeting of July 8 and alleged resolution passed thereat were false and fictitious, and that no meeting was held on that date and that no such resolution was at any time adopted transferring or assigning the policy to Clements, and no consideration was paid to the Flintex Corporation for the alleged transfer and assignment of the policy to Clements; that the said alleged minutes and resolution were fictitious and prepared by Nan C. Kelly while she was secretary-treasurer of the Flintex Corporation for the purpose of inducing the insurance company to consent to a change of beneficiary in said policy; that, pursuant thereto, on July 28, 1925, the insurance company did consent to a

change of beneficiary to the executors, administrators, and assigns of Ralph L. Clements in place of the Flintex Corporation, upon application made by Clements; and that the transfer was made without the knowledge or consent of the Flintex Corporation. In the conclusions of law it is recited "that no valid transfer or assignment of said policy of life insurance was made to the said Ralph L. Clements, and that no valid release or change of beneficiary from said Flintex Corporation to said Ralph L. Clements was effected; that said attempted transfer and assignment, and said attempted release and change of beneficiary were and are invalid, and without any legal force or effect, and that said Flintex Corporation was not divested of any right, title or interest as beneficiary in said policy."

Ralph L. Clements died March 8, 1926. The Flintex Corporation was adjudicated a bankrupt on July 19, 1926, and on July 30, 1926, appellee was appointed trustee of the bankrupt estate.

■ Appellant contends that the trustee had no right to question the alleged transfer of the policy, inasmuch as he did not allege or prove that he represented a creditor of the bankrupt corporation. Not only was this objection not raised in the trial court, by demurrer or otherwise, but the record contains the following statement: "It was stipulated by and between counsel for the parties that plaintiff was duly authorized to maintain this suit." The complaint alleges the election of the trustee at the first meeting of creditors; and there is testimony to the effect that the John Douglas Company was a creditor of the bankrupt corporation in June and July, 1925. There is no testimony in the record to indicate that the creditors have been paid. In any event, it would seem that, under the pleadings and the facts, the right of the trustee to proceed was not affected by the fact that there may have been no creditors. We do not understand that this suit is brought under section 70e or section 67e of the Bankruptcy Act, 11 USCA §§ 110 (e), or 107 (e), but to recover assets of the estate, which the bankrupt could have brought had bankruptcy not intervened.

■ The bankrupt corporation was organized for the purpose of manufacturing battery boxes from a secret formulæ for a hard rubber composition, which was owned by Clements. The business was not profitable, and, as a result, and because of general dissatisfaction, Clements agreed to sever his connections with the company; and on June

30, 1925, in pursuance thereof, the following contract was entered into between Clements and the corporation:

"This agreement entered into this 30th day of June, 1925, by and between Flintex Corporation, a corporation organized and existing under the laws of the State of Ohio, hereinafter referred to as the 'Corporation' party of the first part, and R. L. Clements, party of the second part, Witnesseth:

"That, whereas, on the second day of January, 1924, an agreement was entered into by and between the parties hereto for the transfer by the said R. L. Clements to the Corporation of certain chemical and mechanical processes in consideration of certain of its capital stock, and the agreement to pay him a certain salary for a period of ten (10) years from the date of the said agreement; and

"Whereas, the said R. L. Clements has given his note for Two Thousand ($2,000.00) Dollars bearing date the 27th day of October, 1924, payable on or before the 27th day of October, 1925, in payment of certain capital stock in said Corporation, which said note is now held by said Corporation and is unpaid; and

"Whereas, the said R. L. Clements is desirous of being relieved of the obligations of said note and said Corporation is desirous of being released from the obligations of the payment of future salary to the said R. L. Clements;

"Now, therefore, in consideration of the mutual covenants hereinafter contained, it is agreed by and between the parties hereto as follows:

"1st. The said Corporation shall return to the said R. L. Clements said Two Thousand ($2,000.00) Dollar note for cancellation and the said R. L. Clements shall be released from all obligations thereon to the said Corporation.

"2nd. The said Corporation shall turn over, assign and transfer to the said R. L. Clements, his heirs or assigns, all its right, title and interest in and to battery box molds the said Corporation now has in its possession, a list of which is attached hereto, and by reference incorporated herein and made a part hereof, said battery box molds to be transferred, assigned and turned over to the said R. L. Clements, his heirs or assigns, clear, free and unincumbered.

"3rd. The said Corporation shall return, convey and transfer to the said R. L. Clements, his heirs or assigns, all chemical and mechanical processes mentioned in said contract of January 2nd, 1924, together with any and all changes, amendments, improvements and/or elaborations thereon with the exception of the mechanical and chemical processes to be used in the manufacture of plumbing fixtures and supplies of all and every kind and description. The Corporation shall also transfer, convey and return to the said R. L. Clements all recipes and formula which have been used by the said R. L. Clements in the manufacture of the products of the said corporation or for experimental purposes at the plant of the said corporation with the exception of such recipes and formula as have been used in the manufacture of or experiment on plumbing fixtures and supplies. The Corporation shall also direct the Union Savings Bank and Trust Company to release to the said R. L. Clements all formula it now holds as escrowee under that certain agreement or letter of designation of the President of the Corporation dated the 19th day of April, 1924, and addressed to R. L. Clements.

"4th. The said R. L. Clements hereby releases the said Corporation from any and all obligations whatsoever to employ him, or to pay him any salary after the first day of July, 1925.

"5th. Said Agreement of January 2nd, 1924, and all the rights and liabilities of the parties thereto are hereby cancelled and annulled except insofar as they have been performed.

"In witness whereof, the parties hereto have hereunto and to duplicates hereof set their hands and the said Corporation has caused its seal to be affixed, thereunto duly authorized by its Board of Directors, on the day and year first aforesaid.

"The Flintex Corporation,
"John Douglas, President,
"N. C. Kelly, Secretary,
"R. L. Clements."

Appellant contends that this contract does not contain the full agreement of the parties; that the true agreement was that Clements was also to receive the insurance policy in suit. The court found that the contract of June 30, 1925, "contained all the stipulations and agreements entered into by the parties," and, as above stated, that the change of beneficiary under the policy had been accomplished through fraud on the part of Nan C. Kelly, then secretary of the company, by means of a false resolution spread upon the minutes of the board of directors of the corporation under date of July 8, 1925, purporting to transfer the policy to Clements for a consideration.

The testimony, hereinafter set forth, amply supports the finding that the foregoing contract is the full and complete agreement of the parties. The testimony of the several witnesses regarding the alleged transfer is conflicting; but we cannot say that it does not support the findings made. On behalf of appellant, Nan C. Kelly testified in this regard as follows:

"I remember very well a conversation held on the 13th day of June, in the office of the Flintex Corporation, in Cincinnati, Ohio. Mr. John Douglas was the president of the Flintex Corporation and Dr. Clements was vice-president and general manager. They were both stockholders at the time. * * *

"In regard to the conference Mr. Douglas told Dr. Clements that he wanted the company to discontinue the manufacture of battery boxes, and to manufacture plumbing supplies exclusively. Dr. Clements objected to this. They argued there for four or five hours. The result of their argument was that Dr. Clements said if they manufactured plumbing supplies exclusively he would rather get out, and that inasmuch as Mr. Douglas had gained control of the corporation through violating an agreement previously made with Dr. Clements, there was nothing for him to do but get out. They agreed on certain conditions at that time. Dr. Clements was to release to the Flintex Corporation a certain salary contract entered into on the 2d of January, 1924, with the Flintex Corporation; he was to release to the Flintex Corporation all the formulæ and processes for the manufacture of lavatory seats and plumbing supplies; he was to release to the corporation all of his common and preferred stock in the corporation, his common stock was something around one-third of the entire issue, and his preferred stock was in excess of $7,500. He was to agree to remain in the employ of the company for three months, after his resignation as vice-president and general manager, for the purpose of advising his successor. The Flintex Corporation was to turn over to him $5,000 cash; they were to release to him two certain policies of life insurance on the life of Dr. Clements for $75,000 each; they were to release to him all his formulæ for the manufacture of battery boxes. * * *

"Subsequent to that date there was a directors' meeting held on June 30th, 1925. At this meeting there was present Mr. John Douglas, Ralph Douglas, Charles Douglas and myself. The meeting was held in the offices of the Flintex Corporation. The minutes were written up in the office of the Flintex Corporation on June 30th, 1925.

"Mr. John Douglas dictated the minutes and I transcribed them. Mr. John Douglas also dictated the contract to me immediately before or after he dictated the minutes, it was at the same time.

"There was an objection by Dr. Clements at that time that the contract did not state the full terms of the agreement.

"After the contract was prepared and handed to Mr. Douglas for signature he signed both copies. It was then handed to Dr. Clements. He signed the original and then proceeded to read it. After he had read the contract through he said, 'Mr. Douglas, this does not embody our agreement, this does not cover our previous agreement.' Mr. Douglas said, 'It most certainly does.' Dr. Clements read the contract elaborately. He said, 'It does not include the transfer to me of the insurance policies, it does not include the payment to me of $5,000. It does not include my transfer to you of my stock in the Flintex Corporation, and it does not include the agreement between us that I should stay here for three months at the same salary I have been paid.'

"To that Mr. Douglas said, 'I dictated,' and he turned to me and said, 'Why did you leave it out?'

"I said, 'Didn't leave it out; you didn't dictate it to me.' Then I got my notes and I read them to him.

"He then said, 'All right, it's my mistake; here are the insurance policies. I am going away on my vacation. I am not going to wait until all these papers are rewritten; here are the insurance policies; here is the check for $5,000; you can turn your stock over to me, and you can take my word for it that we will pay you a salary if you stay here three months, and we will have to take your word for it that you will stay three months.' The check was turned over to Dr. Clements. It was the check of the John Douglas Company, as near as I can recall. Both policies of the Union Central Life Insurance Company and the Mutual Benefit Life Insurance Company were delivered to Dr. Clements at that time.

"Mr. Douglas suggested this transfer be made at the subsequent meeting, and he handed Doctor Clements the insurance policies and a check for $5,000. Dr. Clements still demurred; he said 'heretofore I have had verbal agreements with you that you have broken and I do not believe I can take your

word in this particular instance.' Mr. Douglas turned to his son, Charley, and said, 'Dr. Clements, you have the policies, and Charley will do whatever is necessary at the regular meeting we are to have in a week or two, and he will take care of it. I am not going to stay here until all this stuff is rewritten.' Then Dr. Clements took the policies and the check and Mr. Douglas took the stock, and that was the end of that meeting. * * *

"There was a regular meeting of the Board of Directors of the Flintex Corporation held on the 8th of July, 1925, in the office of the company at which Mr. Charles Douglas, Mr. Ralph Douglas, and myself were present. Charles Douglas and Ralph Douglas were directors in the corporation at that time.

"A resolution was introduced assigning and transferring the two respective insurance policies to Dr. Clements."

Opposed to this is the testimony of John Douglas, president of the company, who testified regarding the alleged transfer as follows: "There never was an agreement between Dr. Clements and myself with reference to the surrender to him of any life insurance policy. At no time did I instruct Mrs. Kelly [Nan C. Kelly], Charles Douglas, Ralph Douglas, or any other person, or agree with any other person that any life insurance policy should be surrendered to Dr. Clements. I was not present at any meeting of the directors of the Flintex Corporation at which any authority was given to anyone for the transfer of life insurance policies to Dr. Clements. When I first knew or learned that the policies of insurance in the Union Central Life and, or the Mutual Benefit Life Insurance Company had been transferred to Doctor Clements, I was down in Pensacola, where Mrs. Clements came down to see me, when I first knew that any policies had been transferred whatever. That was subsequent to the death of Doctor Clements."

Ralph Douglas, a director of the corporation, testified at the trial that "the first time I learned about these insurance policies being transferred was about three or four weeks ago," and that he would not have consented to a transfer thereof.

Anthony Bullock, another director of the company, testified by deposition, as follows:

"I was at the special meeting held June 30, 1925. I recall the approval of a contract at that meeting, pursuant to which Dr. Clements resigned as a member of the Flintex Corporation. Mr. John Douglas was not present at that meeting. I remember no complaint being made by Dr. Clements over the terms of this contract that was approved. I do not remember any conversation regarding insurance policies at that meeting. * * * I had no knowledge of the transfer of any policies to Dr. Clements until after I left the company as a director, and understood through conversations I overheard between the broker who sold me the stock and my father in his office. At that time I learned that the policy had been paid, not to the company, but to the other parties. And that was the latter part of 1927, I believe.

"I did not attend a meeting of the Flintex Corporation dated July 8th, 1925. I never heard of that meeting or resolutions passed until this morning or yesterday when I saw them in the minute book."

Charles Douglas, another director, testified:

"I had a conversation with him [Dr. Clements] prior to the execution of this contract [contract of June 30, 1925]. I was to buy all the stock that he had in the company. That, however, is outside of the contract. At the time, the time of the contract I had no understanding or agreement with him with reference to the insurance policies. That is my signature as chairman appearing on the minutes of July 8, 1925 [approving the transfer of the policy to Clements]."

"Q. Minutes of this meeting [July 8, 1925] recite that the directors present were Messrs. Charles E. Douglas, Ralph J. Douglas, and Mrs. N. C. Kelly. I will ask you if any of such directors meeting was actually held. A. It was not.

"Q. I will ask you whether Ralph J. Douglas attended any such meeting, if you know? A. He did not.

"Q. I will ask you who prepared the minutes of this meeting of July 8, 1925, if you know of your own knowledge? A. Mrs. Kelly.

"Q. I will ask you when you signed the minutes of this meeting as chairman, whether you knew that the minutes recited that Ralph J. Douglas was present at the meeting? A. I did not.

"Q. I will ask you whether you had any conversation with Mrs. Kelly with regard to these minutes? A. Mrs. Kelly wrote them out and I signed them.

"Q. The minutes also recite that the first business to come before the meeting was discussion relative to the verbal agreement between the corporation and R. L. Clements to transfer to said R. L. Clements two certain

life insurance policies. State whether or not there was any verbal agreement to transfer life insurance policies to R. L. Clements so far as you know. A. By who?

"Q. By the directors of the corporation and R. L. Clements. A. There was not.

"Q. Did you have any such agreement with R. L. Clements that life insurance policies would be transferred to him? A. Only when the insurance man came out from the insurance company,—Dr. Clements had suggested to me a few days before if he could not have the policies and I asked Mrs. Kelly if there was any money due on them and she said yes, and I thought they were a liability to the company instead of an asset. * * *

"Q. State whether or not you consulted with your father [John Douglas] or your brother, Ralph J. Douglas, regarding the transfer of these policies to Dr. Clements? A. I did not."

This witness further testified, by deposition, as follows:

"I first learned that the Flintex Corporation carried life insurance upon the life of Dr. Clements after he resigned on June 30, 1925, a few days afterwards. Dr. Clements then came to me and asked me if he could not have the policies that the company were carrying upon him and I asked him how much they were and he told me the amount. I then had a talk with Mrs. Kelly about these policies and found there was some money due on the policies, that had been previously obligated to the company in the form of notes, to pay the premium. * * * I thought these policies were a liability to the Flintex Corporation and that they would be of no value to us, that we would have to pay out money to keep them going, and personally I thought we should get rid of them.

"A few days later Dr. Clements came to me and said that the insurance company would not surrender those without authorization from an officer in the company. By surrendering them I mean would not allow them to be transferred and he could not get the benefit of those policies without an official of the company signing a release to the insurance company. The insurance company agent came out with a card and I signed it as vice-president of the company, and that's the last I heard of it for a few days.

"I have seen the minutes of July 8, 1925, in the minute books of the Flintex Corporation. These minutes were prepared by Nan Kelly, secretary of the Flintex Corporation. She explained it to me at the time that it was merely a matter of form. She drew these minutes up and I thought it was necessary to have that sort of minutes or form to give to the insurance company to show that the authorization was all right for the transfer of these policies. I read these minutes before I signed the minutes as chairman. There was no meeting of directors held on July 8, 1925. I made no report to John Douglas, Mr. Bullock, Ralph Douglas, or the other directors with regard to the minutes of July 8, 1925, and the transfer of these two insurance policies to Dr. Clements."

[3] It is well settled that the findings of the trial court, based on conflicting testimony taken in open court, will not be disturbed on appeal. John T. Porter Co. v. Java Cocoanut Oil Co. (C. C. A.) 4 F.(2d) 476 (certiorari denied, 268 U. S. 697, 45 S. Ct. 515, 69 L. Ed. 1163); Gila Water Co. v. International Finance Co. (C. C. A.) 13 F.(2d) 1; United States v. United Shoe Mach. Co., 247 U. S. 32, 41, 38 S. Ct. 473, 476, 62 L. Ed. 968, in which the Supreme Court said: "The testimony was conflicting, it is true, and different judgments might be formed upon it, but from an examination of the record we cannot pronounce that of the trial court to be wrong. Indeed, it seems to us to be supported by the better reason. We should risk misunderstanding and error if we should attempt to pick out that which makes against it and disregard that which makes for it and judge of witnesses from their reported words as against their living presence, the advantage which the trial court had."

We might add that the record discloses that Nan C. Kelly presented a claim against the estate of Clements for $75,000, which was compromised for $40,000; and the proceeds of the policy in question constituted practically the bulk of Clements' estate. Nan C. Kelly was the only witness produced by the defendant, except one Matthew, original administrator of Clements' estate, who testified merely as to matters of detail regarding the estate.

Although Charles Douglas, as vice president of the company, signed a release of the policy to Clements, he had no authority or power to do so; and there is no testimony to show that this attempted transfer was in pursuance of any agreement or contract with Clements to that effect.

We may here state, parenthetically, that we find no merit in the contention of appellant that there is no evidence to impeach the validity of the release of beneficiary executed by the bankrupt corporation, through its vice president, Charles Douglas.

It is also urged that the conduct of the Flintex Corporation, its officers and board of

directors, following the alleged transfer of the policy, amounted to a ratification of the transfer, that the resolution passed by the board of directors at the meeting of July 8, 1925, purporting to authorize the transfer of the policy, was never rescinded or challenged, and that by reason of such laches and acquiescence the trustee is estopped to assert that the minutes of the meeting did not speak the truth. However, we are of opinion that the evidence does not support this contention. John Douglas testified that he did not learn of the transfer of the policy until after Clements' death, and that he never attended a meeting of the board of directors of the Flintex Corporation and never read the minute book. Ralph J. Douglas testified that he did not know of the transfer until three or four weeks before the trial below; and Bullock, the other director, also testified that he did not learn of the transfer of the policy until after Clements' death. In any event, the court found against the affirmative defense of estoppel or ratification; and the presumption is that his findings are correct, "unless the appellants make it clearly appear that an obvious error of law has intervened, or a serious mistake of fact has been made in the consideration and decision of the issues in the case." Coats v. Barton (C. C. A.) 25 F.(2d) 813, 815.

The record contains a copy of the minutes of a special meeting of the board of directors of the Flintex Corporation held on September 15, 1925, at which meeting the "minutes of the last meeting were approved." Appellants contend that the alleged meeting of July 8, 1925, was thereby ratified. But, if the meeting of July 8, 1925, was false and fictitious and not actually held, as found by the trial court, then the approval of the "minutes of the last meeting" would refer, not to the meeting of July 8, 1925, but to the last regular meeting of the corporation, that of June 30, 1925.

Appellant also contends that the policy had no cash surrender value, and cites the case of Burlingham v. Crouse, 228 U. S. 459, 460, 33 S. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, in which the Supreme Court held that "under § 70a [11 USCA § 110 (a)] life insurance policies which have no cash surrender value, or on which the company has loaned the full surrender value so that the policy has no cash surrender value remaining, do not pass to the trustee as general property." It is therefore argued that there was no property right in the policy in suit that could pass to the trustee. Granting the soundness of this argument, it is of no avail to appellant, because it is clear that the rule only applies to cases in which the bankrupt was the assured; whereas in the case before us the bankrupt was the beneficiary under the policy, and was never divested of its right to the proceeds. See Ruckel v. Metropolitan Life Ins. Co., 6 A. B. R. (N. S.) 907, 911.

Decree affirmed.

### On Petition for Rehearing.

PER CURIAM.

In its petition for rehearing appellant claims that this court erred in applying the rule that findings of a trial court, based on conflicting testimony taken in open court, will not be disturbed on appeal. This objection is made because the testimony on behalf of the plaintiff was taken by deposition. The record does not clearly indicate whether all of such testimony was taken by deposition or in open court. There is a stipulation "that such depositions as may be taken may be used at the time of the trial as if said witnesses were personally present and testifying," etc. However, preceding the testimony of each witness is the statement, "A witness produced on behalf of plaintiff testified as follows." We have since ascertained from the records of the trial court that all of plaintiff's testimony was by deposition. Nevertheless, as stated in our opinion and as we now repeat, the testimony supports the findings.

The petition for rehearing is therefore denied.