## EASTON v. BRANT et al.[*]

Circuit Court of Appeals, Ninth Circuit.
May 31, 1927.

No. 5033.

1. **Appeal and error ⬤⟞1009(1)—Chancellor's findings on testimony in open court will not be disturbed, except for error of law or mistake of fact.**

Findings of the chancellor, based on testimony taken in open court, are presumptively correct, and will not be disturbed on appeal, except for obvious error of law or serious mistake of fact.

2. **Trusts ⬤⟞44(3)—Person seeking to vary terms of written contract and establish secret trust must make out case by clear and unmistakable evidence.**

A person who seeks to vary the terms of a written contract, and to establish a secret trust as against another, assumes a heavy burden, and must make out his case by clear and unmistakable evidence.

3. **Executors and administrators ⬤⟞221(4)—Rule requiring secret trust to be established by clear and unmistakable evidence applies particularly in attempt to establish trust against estate of decedent.**

Rule requiring person, seeking to establish secret trust against another, to make out his case by clear and unmistakable evidence, applies especially to cases where attempt is made to establish a trust as against estate of decedent.

4. **Trusts ⬤⟞44(2)—Evidence held not to establish that conveyance was in trust to prevent mortgage foreclosure with agreement for return of residue after paying mortgage.**

In suit to establish that conveyance of certain land was for purpose of preventing foreclosure, and that grantee was to take property in trust and to return residue after paying off mortgage, evidence *held* insufficient to establish that transaction was of such nature.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Paul J. McCormick, Judge.

Suit by E. E. Easton against Susan T. Brant and others. Decree of dismissal, and complainant appeals. Affirmed.

Melville P. Frasier, of Los Angeles, Cal., Edgar E. Hendee and William H. Wylie, both of San Diego, Cal., and Homer C. Mills, of Los Angeles, Cal, for appellant.

E. E. Millikin, Joseph L. Lewinson, and O'Melveny, Millikin & Tuller, all of Los Angeles, Cal., for appellees.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. This is an appeal from a final decree dismissing a com-

[*]Rehearing denied August 1, 1927.

plaint in equity. The issues in the case are very simple; the questions involved are questions of fact only, and any attempt on our part to review the voluminous testimony or set forth in detail the many collateral issues brought into the case would serve no purpose.

In 1910, the Imperial Valley Land & Irrigation Company of Lower California purchased 32,000 acres of raw land in Mexico from the Colorado River Land Company for the sum of $1,200,000. A part of the purchase price was paid in cash and the balance was secured by mortgage on the granted lands. The cash payment seems to have been made by one Cudahy, who had arranged in some way with the appellant, Easton, to finance the Imperial Valley Company and take in return 75 or 80 per cent. of its capital stock. Differences thereafter arose between Easton and Cudahy, which are not material here. These differences were settled and compromised by a transfer of one half of the 32,-000 acres to Cudahy individually; the title to the other half remaining in the Imperial Valley Company. Later the Imperial Valley Company sold 1,000 acres of the land, so that for some time prior to July 1, 1915, that company owned the remaining 15,000 acres, subject to a mortgage in favor of the Colorado River Land Company in the sum of $325,000, due July 1, 1915. Easton at that time owned all of the capital stock of the Imperial Valley Company. In 1915, the time for the payment of the mortgage debt was extended for a period of two years, because of certain difficulties encountered in securing the recordation of the conveyance in accordance with the laws of Mexico. This two-year extension was procured largely through the instrumentality of O. F. Brant, now deceased. The extension period expired on July 1, 1917, and, while Grant favored a further extension, the officers of the mortgagee were unwilling to grant it.

Under date of November 21, 1917, Brant made a proposition to Easton in the form of an escrow agreement, whereby Gen. M. H. Sherman, Harry Chandler, one Lindsay, and Brant would purchase from Easton the entire capital stock of the Imperial Valley Company, paying therefor the sum of $17,500 in cash and conveying to Easton a tract of some 440 acres of land owned jointly by Sherman, Chandler, Lindsay, and Brant. After due consideration, Sherman, Chandler, and Lindsay refused to agree to this proposition, feeling that they would be subject to criticism as officers or stockholders of the mortgagee, if they became purchasers of the mortgaged premises without paying the mortgage debt, and that they were not then prepared to do. Thereafter Brant, on November 28, 1917, substituted his home place in Los Angeles for the 440-acre tract; the deal was consummated, the home place was conveyed by Brant to Easton, and the $17,500 cash payment was made. At the same time the Imperial Valley Company stock was transferred to Brant. Later Easton conveyed the Brant home to the Engineering Exploration Company, Limited, a corporation under his control. The Exploration Company mortgaged the property for the sum of $15,000, which was paid to Easton, and rental in the sum of $250 per month was paid by Brant to Easton, or to the Exploration Company, from the date of the transfer until the property was reconveyed to Brant by the Exploration Company on April 1, 1919, subject to the $15,000 mortgage placed thereon by the Exploration Company, and in consideration of the sum of $34,000 then paid by Brant.

Soon after the transfer of the Imperial Valley Company stock to Brant, Easton and other officers of the corporation resigned their respective offices, and others were elected or substituted in their places. In January, 1918, 8,000 acres of the Imperial Valley Company land were sold to one Shintani for $65 per acre, payable in installments, and in October, 1920, the remaining 7,000 acres were sold to Keller, Allen & Co. for the sum of $550,000 in capital stock of the Globe Cotton Oil Mills, a corporation. A considerable part of the consideration for the first-mentioned sale has been paid, and the stock received in consideration for the second sale has apparently become worthless, but that fact is not deemed material here. Brant died in March, 1922, and about five months later a claim was presented by Easton against his estate. The claim was rejected, and the present suit followed.

Briefly stated, Easton contends that in November, 1917, Brant represented to him that he was unable to procure a further extension of time for the payment of the mortgage on the Imperial Valley Company land; that if the debt was not paid at once the mortgage would be immediately foreclosed, without any right of redemption; that, if Easton would transfer the Imperial Valley Company stock to him, his relations with the officers of the mortgagee were such that they would not foreclose the mortgage as against him; that he would take an assignment of the stock from Easton in trust, would sell the Imperial Valley Company land, deduct advances made, pay off the mortgage, and return the residue to Easton.

It is further contended that the Brant home was conveyed to Easton to enable the latter to dispose of it without the knowledge of Brant's wife; that the mortgage to the Exploration Company was placed thereon at the instance of Brant, and that the transfer was made and the rentals paid for the purpose of enabling Easton to dispose of the property, and to give the transaction the appearance of an absolute sale, thus leading the officers of the mortgagee to believe that Brant was in fact the sole owner of the property.

It is further contended that Brant promised to execute a written declaration of trust, but refused to give a copy thereof to Easton, under the pretense that, if such copy were given out, the true nature of the transaction would become known to the officers of the mortgagee. There are many other allegations in the complaint, but they are not deemed material at this time, because, unless the secret trust was established, as set forth in the complaint, the foundation for the action entirely fails.

[1, 2] On the foregoing facts, the appellant is confronted by two well-established principles of law, from which there is little or no dissent: First, the findings of the chancellor, based on testimony taken in open court, are presumptively correct and will not be disturbed on appeal, save for obvious error of law or serious mistake of fact. Savage v. Shields (C. C. A.) 293 F. 863. Second, a person who seeks to vary the terms of a written contract, or to establish a secret trust as against another, assumes a heavy burden, and must make out his case by clear and unmistakable evidence. In such cases the court is not bound to accept the uncorroborated testimony of an interested party, even though his testimony is not contradicted.

"The case may be decided upon a principle governing a class of cases of the same nature. Among them there are the following: Where a written instrument is sought to be reformed upon the ground that by mistake it does not correctly set forth the intention of the parties; or where the declaration of the mortgagor at the time he executed the mortgage, that the equity of redemption should pass to the mortgagee; or where it is insisted that a mortgagor, by a subsequent parol agreement, surrendered his rights. These and the case we are considering are governed by the same principle.

"In each case the burden rests upon the moving party of overcoming the strong presumption arising from the terms of a written instrument. If the proofs are doubtful and unsatisfactory, if there is a failure to over-come this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties. A judgment of the court, a deliberate deed or writing, are of too much solemnity to be brushed away by loose and inconclusive evidence." Howland v. Blake, 97 U. S. 624, 24 L. Ed. 1027.

"The triers of fact are not, however, bound to accept the testimony of a single witness as true even though he is not contradicted; and the courts have frequently held the testimony of a single witness not to be such clear and convincing proof as is required to sustain a verdict or finding where it was offered for the purpose of varying or contradicting a writing, or was opposed by a strong presumption of law, as for instance, the presumption that a written instrument expresses the real intention of the parties, or that a deed duly executed and acknowledged and in possession of the grantee was duly delivered to him, or the presumption of the truth of an officer's return of service of process, or the verity of an officer's certificate of acknowledgment." 23 C. J. 54.

"Uncontradicted evidence is not, however, necessarily binding on the court or a jury, but may be disbelieved where it is contrary to the natural or physical laws, opposed to common knowledge, inherently improbable, inconsistent with circumstances in evidence, or somewhat contradictory in itself, especially where the witness is a party or interested, or where, in the very nature of things, it is impossible to secure opposing testimony." 23 C. J. 47.

[3] This is especially the case where an attempt is made to establish a trust as against the estate of a decedent. As said by the Supreme Court in Lea v. Polk County Copper Company, 21 How. 493, 504, 16 L. Ed. 203: "Courts of justice lend a very unwilling ear to statements of what dead men have said."

"Grave doubts are entertained whether a decree in such a case ought ever to be made upon the uncorroborated testimony of the grantor, but it is not necessary to decide that point, as the court is clearly of opinion that such a decree ought not to be made where it appears that the witness is interested adversely to the respondent, is contradicted by another witness, and has himself given false and contradictory accounts of various matters material to the issue, and, especially, where it appears that the claim has been long delayed and was never made in the lifetime of the grantee. Claims of the kind are easily

made, and unless full proof is required to sustain them, it is to be feared that the estates, of dead men will afford much less comfort and support to their widows and minor children than the decedents supposed the estates would, while they were expending their strength in toil and industry to earn and save the property for that purpose." Clifford, Circuit Justice, in Andrews v. Hyde, Fed. Cas. No. 377.

"Exposed to all the infirmities just mentioned and to the further objection that it is impossible, in most cases, to convict the witness of perjury, if his testimony is willfully false, testimony as to the oral statements of deceased persons, which is therefore regarded as the weakest kind of evidence and subjected to the closest scrutiny." 22 C. J. 291.

[4] With these well-settled principles of law in mind, little further need be said. The alleged trust was created in the latter part of 1917. All the trust property was sold or contracted to be sold in January, 1918, and October, 1920. The transfer of the stock was absolute in form, and at all times after the transfer Brant had full control and dominion over the property of the corporation, and over the corporation itself. The appellant thereafter paid no heed to either. No claim that the stock was transferred in trust was publicly made by the appellant until some time after the death of Brant in March, 1922. The sole testimony offered by him, tending to establish the so-called trust, came from the appellant himself. There was an attempt to corroborate his testimony by proof of vague admissions of doubtful import made by Brant, but such testimony was utterly valueless.

The burden rested upon the appellant, not only to establish the trust, but to satisfactorily explain many acts of his own entirely inconsistent with the trust theory, such as the conveyance of the Brant home to appellant, its transfer to the Exploration Company, the mortgage by the Exploration Company, the payment of rent by Brant, and attempts on the part of the appellant to exchange the home for other property. Some of these acts the appellant explained by stating that they were done at the instance of Brant; as to others, no explanation was offered. The appellant testified that the Brant home was transferred to the Exploration Company at the instance of Brant, so that he might be protected in the event that anything should happen to the appellant. It seems strange that the same considerations did not move the appellant to demand protection of some sort in the event that anything should happen to Brant. He claims that he asked Brant for a copy of the declaration of trust, and that Brant refused it on the ground that the entire transaction would then become public. This excuse, if made, was so lame and flimsy that it would arouse, rather than allay, suspicion. But, without further comment, we deem it sufficient to say that the court below was amply justified in finding that the appellant utterly failed in his proof.

The decree is therefore affirmed.