## JONES et al. v. JONES et al.

Circuit Court of Appeals, Ninth Circuit. November 25, 1929.

No. 5789.

J. W. Jones and Lucille May Platts, both of Honolulu, Hawaii, in pro. per.

Ulrich & Hite, of Honolulu, Hawaii, for appellees.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. This is an appeal from a judgment of the Supreme Court of Hawaii affirming a decree of the Circuit Court. Jones v. Jones, 30 Hawaii, 565. In the trial court the appellants were the defendants, and herein they will be so designated. The plaintiff, Cora Jones, is, and at all times herein mentioned was, the wife of defendant J. W. Jones, and she brought the action to have set aside a deed to residence property in Hawaii, executed by him to his codefendant Lucille May Platts, on April 15, 1925, for a recited consideration of $7,500. By the decree the deed was canceled and possession of the property awarded to plaintiff.

A part of the property was acquired in 1910, and the deed therefor, dated May 6th of that year, was executed to the plaintiff. The other portion was conveyed to her on November 23, 1917. It will be assumed that the husband paid the consideration for both tracts.

It further appears that on May 4, 1910, the plaintiff executed and delivered to him a general power of attorney, and in 1912, upon his suggestion, she gave another power of attorney to one Walker, and in 1920 a second power of attorney to her husband. None of these powers was ever formally revoked. For some time prior to April 15, 1925, plaintiff was estranged from her husband, the principal cause for the estrangement on her part being observations of close association and apparent relations between her husband and his codefendant, which, according to her testimony, gave just grounds for offense. Such association she testified continued over her protest, during the years 1921 and 1922, until in February, 1923, she left Hawaii for California, where she remained until after the deed in question was given. During this absence her husband brought against her a suit for divorce, which was pending on April 15, 1925, and at the time the deed in question was executed both defendants were living in the residence constituting part of the premises conveyed thereby. For some time negotiations had been going on between the defendant Jones by his attorney, and plaintiff's attorney, for a division of their property. Without advising her or her attorney of the termination of the negotiations, and, though therein he had always apparently conceded that the property belonged to plaintiff, he secretly executed the deed as plaintiff's attorney in fact, thus doing what he knew to be directly hostile to her wishes and interests. First he attempted to procure the execution by Walker under the old power of attorney given to him in 1912. He explained that he had forgotten that he himself had the power of 1910, though he seems to have had in mind the one of 1920. Later he added that he appealed to Walker because his attorney advised him that "it would look better if a deed were executed under the Walker power of attorney." Walker declined to act without first having plaintiff's approval, and he communicated with her for that purpose, but before he could get a response Jones executed the deed, in the face of the advice of his attorney that such a transaction would not "look" well. He claims to have received the $7,500 consideration in currency, which his codefendant had kept in and took from a tin box, and this, with most of the other property he possessed, he promptly proceeded to give away to divers persons and organizations. Though for a long time closely associated with him, his codefendant testified that she did not know that the title to the property stood in plaintiff's name or that he had brought an action for divorce.

The underlying contention of defendant Jones is that the consideration for the property originally was paid by him, that the title was taken in plaintiff's name for "convenience" only, and that therefore in reality it belonged to him, and she had no interest, other than dower, in it. When pressed as to why or how such a disposition of the title would serve his convenience, he was unable to give even a plausible explanation. Moreover, upon resorting to the deed in question, we find that he names plaintiff as the sole grantor, and, after the recital of the payment to her of the $7,500 consideration, the granting clause, a description of the property, and the usual "to have and to hold" clause, we find this paragraph:

"And the said Grantor for herself, her heirs, executors and administrators, does hereby covenant and agree to and with the said Grantee, her heirs and assigns, that she, the said Grantor, is seized in her own right of the said lot, piece or parcel of land and premises for an estate of inheritance in fee simple, free and clear of and from all incumbrances; that she has good right to sell and convey the same unto the said Grantee as aforesaid, and that she will, and her heirs, executors and administrators shall warrant and defend the same unto the said Grantee, her heirs and assigns forever, against the lawful claims and demands of all persons."

And then:

"And J. W. Jones, husband of said Grantor, in consideration of the premises and of one dollar ($1.00) to him paid, doth hereby consent to the foregoing conveyance by his said wife, and doth release unto said Grantee, her heirs and assigns forever all his right, title and interest in and to said property."

The instrument is signed:

"Cora Jones, By J. W. Jones, her attorney in fact. J. W. Jones."

We thus have not only a presumption arising from the original deed that the property belonged to the plaintiff, but we have language in the deed of conveyance prepared and executed by the defendant himself naturally implying only such ownership.

■■ It would serve no useful purpose to attempt a further analysis of the evidence, much of which is highly conflicting. Some-

of the testimony of the defendants is so improbable and inherently inconsistent that it is unworthy of credence, and the trial court very properly declined to believe it. That of the plaintiff is far from being satisfactory, for she repeatedly made statements which turned out to be in conflict with writings signed by her. But it is not necessary to conclude therefrom that she willfully testified falsely; nor did the trial court so find. There is no basis, therefore, for invoking the rule that she should be denied relief for attempting to deceive the court. She may have forgotten the contents of the writings, and, under the circumstances shown, it is reasonable to conclude that some of the instruments, at least, she had formally signed without carefully reading them or having full knowledge of their contents. The Supreme Court of the Territory very appropriately said:

"The determination of the main issues of fact resting entirely upon testimony of witnesses as distinguished from documentary evidence, the case is peculiarly one falling within the rule well established in this jurisdiction that ordinarily great weight will be given to findings of fact made by the Trial Judge and that his views as to the credibility of the witnesses will not be disturbed except for very good cause. This consideration alone would require us to sustain the findings of the Trial Judge upon the disputed issues. We do not hesitate to say, however, that a careful examination of the transcript of evidence leads irresistably to the conclusion that the Trial Judge was correct in his findings of fact and in the comments which he made relating to the credibility of the witnesses."

Touching certain minor questions upon which appellants assign error, we are in full accord with the views of the Supreme Court of the Territory, and we could add nothing of value to the discussion thereof as found in the published opinion hereinbefore cited.

Accordingly, the judgment will be affirmed.