**OREGON MORTGAGE CO., Limited, v.
RENNER et ux.**

No. 8663.

Circuit Court of Appeals, Ninth Circuit.
April 21, 1938.

W. G. Bissell and Branch Bird, both of Gooding, Idaho, for appellant.

S. T. Lowe, of Burley, Idaho, for appellees.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Appellant filed an amended bill of complaint praying for judgment determining an amount allegedly due under a contract to purchase real property made by appellees, fixing a reasonable time for payment of the same, and, upon default in such payment, foreclosure of the contract. Appellees filed a cross-complaint alleging rescission of the contract because of false representations, and praying judgment for the money they had expended in connection with the property. The decree dismissed the bill and gave judgment for appellees in the sum of $4,767.19 with interest, from which this appeal is taken.

Appellant is a corporation organized under the laws of Great Britain and Ireland. Appellees are husband and wife. On and prior to August 1, 1927, appellant was the owner of 180 acres of land in Cassia county, Idaho. The land included 3 parcels in one section: (1) the N.½ of the N.W.¼; (2) the N.½ of the S.E.¼; and (3) the N.½ of the S.E.¼ of the S.W.¼.

On that date it entered into an agreement with appellees, by which appellant agreed to sell appellees the land "Together with any and all water rights decreed or otherwise appurtenant thereto, for the sum of * * * $8200.00 * * * payable as follows: $800.00 in cash on the delivery of this agreement, and the balance in accordance with the terms of eight promissory notes of even date herewith. * * *" The notes bore interest at the rate of 7 per cent. per annum and were in the principal sum of $1,000 each, except two which were in the principal sum of $700 each. One of the notes for $700 became due on December 1, 1927, and each of the $1,000 notes became due on the same day but in successive years. The last note was for $700 and became due on December 1, 1934. The agreement also obligated appellees to pay the taxes and insurance on the property. The agreement provided that, upon default in the payment of the notes, appellant might declare the agreement forfeited, terminate its obligations, in which event it was entitled to any improvements on the premises, the growing crops and produce, and all sums theretofore paid on the contract by appellees as "liquidated damages."

Appellees took possession of the premises about February 1, 1927. Prior to February 28, 1936, they had paid $2,500 on the purchase price, $1,543.92 as interest on the unpaid portions thereof, and taxes for the years 1927 and 1928 in the sum of $475.47, the total of these payments being $4,519.39.

On February 28, 1936, the amended bill was filed. It alleged execution of the contract, and default in payment of the notes due on and subsequent to December 1, 1929, of interest, of premiums due on insurance, and taxes.

Appellees answered, alleging an affirmative defense that in entering the contract, they relied upon representations made by appellant "that the said real estate had a water right of 35 inches of the waters of Howell Creek with date of priority of 1876, 50 inches of the waters

of Howell Creek with date of priority of 1880, and 130 inches of the waters of Howell Creek with date of priority of 1892; that the 35 inches of water of Howell Creek with date of priority of 1876 was a second right in Howell Creek in date of priority and that the water rights that were appurtenant to said real estate were ample and sufficient to properly irrigate the same, and the whole thereof." They further alleged that appellant prevented inquiry into the nature of the water rights, that the amount of water appurtenant to the property was not shown of record, and that "the said real estate has a right to the waters of Howell Creek for 35 inches with date of priority of 1876 but the said right is not a second right in Howell Creek; that there is not appurtenant to the said real estate a decreed water right of 50 inches of the waters of Howell Creek with date of priority of 1880 or any other number of inches of the water of Howell Creek with date of December 1, 1880, in excess of 30 inches; that the water rights that are appurtenant to said land are not sufficient or ample to irrigate the said real estate or to produce profitable agricultural crops thereon."

Appellees also alleged that they did not discover that the representations were false and fraudulent until May 21, 1934, that thereafter appellant agreed to adjust the agreement and procure a water right sufficient to properly irrigate the property, and that on January 13, 1936, appellees rescinded the agreement, executed and delivered a quitclaim deed to the property, and offered to surrender the premises upon reimbursement to them of the sums expended. As a cross-complaint appellees alleged the same facts, failure of appellant to make reimbursement of, and demanded judgment for amounts paid on the purchase price and for improvements.

The trial court found the facts to be substantially as alleged by appellees. Specifically, the trial court found that appellant had made the representations concerning water rights as alleged by appellees. It found the actual facts, at the time the representations were made, to be that there was appurtenant to the second parcel not alone as represented but also to an additional 80 acres of land, 35 inches of the waters of Howell creek with date of priority of March 31, 1876; that such right was not the second right in Howell creek as represented, but was the ninth

right; and that the eight prior rights aggregated 804 inches of water. It found that there was appurtenant to the third parcel, not alone as represented but also to an additional 20 acres, 15 inches of the waters of such creek, with date of priority of December 1, 1880. It also found that there was appurtenant to all three parcels, 130 inches of the waters of such creek, with date of priority of April 21, 1892, but that "there is never water to fill the 1892 right, excepting during extreme high water years, and the said right has no value for irrigation purposes." Finally, it found, with respect to the water, that the available amount was "not sufficient to properly irrigate the land or to produce profitable agricultural crops thereon."

The trial court also found that appellant led appellees to believe, and appellees did in fact believe, that other persons were using the water to which appellees were entitled; that appellees did not discover the falsity of the representations made at the time of the execution of the contract, until May 21, 1934; and that thereafter appellant induced appellees to remain in possession of the land under representations that it would procure water sufficient to properly irrigate the land. Finally, the court found that the property in question had no rental value during the time appellees occupied it, because of lack of water to irrigate the same, that appellees derived no profits therefrom, and that appellees were not liable for any rents, issues, and profits.

The decree dismissed the bill and granted a judgment to appellees for the amounts they had paid on the purchase price, as interest, and for taxes, in the sum of $4,519.39 and costs.

This appeal was taken from that decree.

Appellant contends that the trial court's finding, that the representations were made as alleged, is erroneous. Appellee John Renner testified positively that such representations were so made. There was evidence from which it might be inferred that such representations were not made. However, the solution of the question rests primarily on the credibility of witnesses, and the weight of evidence. In considering this evidence, the findings of the trial court on conflicting evidence are presumptively correct and will not be set aside unless a serious mistake of fact or

law appears.[1] The credibility of witnesses being here involved, there being no question of law involved, and it appearing that the trial court's finding is not contrary to the great weight of evidence,[2] unless we give no weight to evidence which the trial court believed, we sustain its findings that the representations were in fact made as alleged. The trial court, having heard the witnesses, was in a far better position than we are, to determine which were credible.

■ Appellant challenges the finding that the right of priority of 1880 was 15 inches and points out that a proceeding brought by John Renner in an Idaho state court resulted in a decree dated June 14, 1934, adjudicating that such right was 30 inches. In that suit, 30 inches of water was adjudicated to be appurtenant to the third parcel, not alone but to 40 additional acres, instead of 20 acres as found by the trial court. It is clear that no such amount of water claimed by appellant was appurtenant to the property or any part of it, and we need not speculate as to how much the representation of 50 inches was false, for it is clear that it was in fact false even if we assumed that the amount of water was 30 inches as claimed.

■ The finding that appellant represented that there was sufficient water appurtenant to the property to properly irrigate it is also challenged, on the ground that there was no evidence that "the water rights appurtenant to this land were inadequate at and prior to the time of the sale." It is asserted that "there is a complete failure to prove that plaintiff and its agents at or prior to the time of the sale knew that the water rights were inadequate, or that such information was available to them." Despite that broad assertion the record discloses testimony of one Baird, a former owner of an interest in the land, that the water was never sufficient to irrigate all the land, and sufficient to irrigate the land which had been put under irrigation (about half of the whole) only if "we rotated with our neighbors."

A neighbor of appellees, one Neiman, testified that while appellant's sales agent was talking with appellee John Renner about, and prior to, the sale of the property, he told Renner in the sales agent's presence: " * * * I said, 'I live right above you and it would probably be a good water right if you could get it past me.' I said there is 35 inches which is a pretty good water right. I didn't know they were trying to close a deal. The man then stepped outside and [the sales agent] said, 'Why did you say that? It might queer the deal.' I said, 'You know what it is with 35 inches, and you don't need to tell me because I know what kind it is.' He said I was not implicated in the deal, and I told him I wasn't interested at all and to go ahead and make the deal, and he said, 'Don't interfere with it anymore.' * * * *"

The proper inference from this testimony, we believe, is that the sales agent had knowledge of the inadequacy of the water prior to the sale to appellees.

Appellant's main contentions are directed to the propositions that appellees' cause of action was barred by the Idaho statute of limitations, Code Idaho 1932, § 5-218, and that appellees were guilty of laches.

■ The Idaho statute limits the time within which such actions may be brought to 3 years. Appellant concedes that such statute is not binding upon us in this suit, nevertheless we should be guided by it. See Freeman v. Hopkins, 9 Cir., 32 F.2d 756, certiorari denied 280 U.S. 575, 50 S.Ct. 30, 74 L.Ed. 626. Appellees first discovered the fraud on May 21, 1934, according to the trial court's finding. Appellant seems to contend that appellees discovered the fraud prior to that time.

■ Whatever else may be said concerning the defense of laches, we think it is clear that appellant is not entitled to invoke that defense. Prior to discovery of the fraud by appellees, appellant represented that other people were using appellees' water. After the discovery, it represented to appellees that it would obtain sufficient water for them. It thus contributed to the delay in rescinding. As said in Northern Pac. Ry. Co. v. Boyd, 9

[1] National Reserve Ins. Co. v. Scudder, 9 Cir., 71 F.2d 884; United States v. McGowan, 9 Cir., 62 F.2d 955, 957, affirmed 290 U.S. 592, 54 S.Ct. 95, 78 L. Ed. 522; Clements v. Coppin, 9 Cir., 61 F.2d 552, 558; Exchange National Bank v. Meikle, 9 Cir., 61 F.2d 176, 179; Jones v. Jones, 9 Cir., 35 F.2d 943, 945; Easton v. Brant, 9 Cir., 19 F.2d 857, 859; Gila Water Co. v. International Finance Corp., 9 Cir., 13 F.2d 1, 2.

[2] Compare New York Life Ins. Co. v. Simons, 1 Cir., 60 F.2d 30, 32.

Cir., 177 F. 804, 824: "Where the party interposing a defense of laches has contributed to or caused the delay, he cannot take advantage of it." See, also, Dexter & Carpenter v. Houston, 4 Cir., 20 F.2d 647, 654; Taylor v. Salt Creek Consol. Oil Co., 8 Cir., 285 F. 532, 537; Spiller v. St. Louis & S. F. R. Co., 8 Cir., 14 F.2d 284, 288; Gaskins v. Bonfils, 10 Cir., 79 F.2d 352, 357. In Feak v. Marion Steam Shovel Co., 9 Cir., 84 F.2d 670, 673, 107 A.L.R. 583, the party making the fraudulent representation merely reasserted the truth of its prior representations, whereas here, appellant made new representations to induce nonaction by appellees.

Appellant also contends that appellees ratified the transaction and elected not to rescind after discovery of the fraud by remaining in possession of the property, and relies on Grymes v. Sanders, 93 U.S. 55, 23 L.Ed. 798, and Shappirio v. Goldberg, 192 U.S. 232, 24 S.Ct. 259, 48 L.Ed. 419. Up to the time of rescission on January 13, 1936, appellees ratified nothing because of appellant's representations that it would procure sufficient water rights for irrigation. On January 13, 1936, the attorney for appellees wrote appellant, setting forth the representations made, that they were false, and that, because thereof, they "have elected to and do hereby rescind the said contract and are tendering and delivering to you herewith a quit claim deed to said premises"; and that appellees "will quit and surrender possession of the said real estate upon receipt of the" amounts appellees had expended in connection with the property.

Appellant's contention is based on the theory that appellees waived the fraud and thereby ratified the transaction. Waiver is defined as "the intentional relinquishment of a known right." Lehigh Valley R. Co. v. Providence-Washington Ins. Co., 2 Cir., 172 F. 364, 365. We think it to be obvious, in view of the letter rescinding the transaction, that appellees were not relinquishing their right to rescind by remaining in possession.

Finally, appellant contends that it was not restored to status quo, in that appellees should have been required to pay appellant the rental value of the property, the accrued taxes, and depreciation on the property. We believe restoration to status quo means restoration of what

was received by the transaction. Christian v. Waialua Agricultural Co., 9 Cir., 94 F. 2d 806, 807. Compelling payment for the rentals may be justified, however, as a separate principle. Ordinarily the purchaser is required to account for the reasonable value of his occupancy. 27 R.C.L. 655, § 416.

The trial court found that the property in question had no rental value during the time appellees occupied it, and that they derived no profits from it. There was evidence that no crops were raised, but that they burned up and died for lack of water. Appellant's sales agent testified that the reasonable rental value of the property was $400 per year. The trial court, however, obviously did not believe the testimony. We will not disturb that conclusion.

It is of course true that appellees should pay reasonable rental for use of the buildings. There was no testimony as to such value. In addition, appellees made some improvements on the property. The trial court may have considered that improvements placed on the property by appellees offset such rental value. At any rate, since there was no evidence of such value, and no specific claim therefor by appellant, we will not disturb the decree.