**OLIVER et al. v. BELL.**
No. 6828.

Circuit Court of Appeals, Third Circuit.
April 5, 1939.

Henry O. & Oliver Evans, of Pittsburgh, Pa. (Henry O. Evans and Oliver Evans, both of Pittsburgh, Pa., of counsel), for appellants.

James W. Morris, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and John E. Garvey, Sp. Assts. to Atty. Gen., and Charles F. Uhl, U. S. Atty., of Pittsburgh, Pa., for appellee.

Before DAVIS, MARIS, and BUFFINGTON, Circuit Judges.

DAVIS, Circuit Judge.

This was a suit by plaintiffs to recover $444,492.10 which they, as executors of the estate of David B. Oliver, deceased, paid to defendant on a deficiency assessment of estate taxes made against the estate of David B. Oliver because in his lifetime he transferred to his children and grandchildren "in contemplation of death" certain property which they did not include in his gross estate when making the tax return.

The learned district judge, before whom the case was tried without a jury, determined as a fact that the property was transferred "in contemplation of death".

Mr. Oliver died testate on October 21, 1934, at the age of 99 years, 11 months and 11 days. He left a last will and testament bearing date April 6, 1932, which was duly probated and on which letters testamentary were issued. His executors in due time filed an estate tax return purporting to show the tax due on the estate, which they paid.

On April 4, 1932, two days before his will was executed, he transferred to each of his four daughters, to each of his two sons and to two grandchildren, the children of a deceased son, the following shares of stock:

180 Aluminum Company of America, Common

180 Anaconda Copper Mining Company, Common

750 Armstrong Cork Company, Common

1543 Harbison Walker, Common

121 National Union Fire Insurance Company

2403 Phelps-Dodge Corporation, Capital stock

400 Pittsburgh Coal Company, Pfd.

464 Sinclair Consolidated Oil Corporation, Common

2643 Socony Vacuum Oil Corporation, Capital stock

600 Timken Roller Bearing, Common

714 United States Steel, Pfd.

The gifts to the daughters and grandsons were in trust with remainders over, but those to the two sons were "outright", absolute gifts.

As above stated the property so transferred was not included in the gross estate in the return made by the executors. But on final audit the commissioner determined that the transfers made on April 4, 1932, were gifts made "in contemplation of death", were substituted for testamentary dispositions and should have been included in the gross estate.

The value of the property transferred was $1,526,732.67 on which the commissioner, under the applicable provisions of the Revenue Act of 1926, assessed a tax of $438,288.00, which, with interest, totaled $444,492.10.[1] This was paid and suit was brought to recover the payment thereof.

These transfers were made two and one-half years before the death of the decedent and when he was over ninety-seven years of age.

The plaintiffs alleged that the growing needs and expenses of decedent's children and the curtailment of their income, together with his desire to give them and their families every advantage, were the reasons and the only reasons that induced him to make the transfers.

This the commissioner denies and contends that the transfers were made "in contemplation of death" in order to avoid the payment of high taxes on testamentary gifts.

A jury was waived by the parties and the case was tried to the judge without a jury. He found as a fact that the transfers were made "in contemplation of death". His findings of fact have the force and effect of a finding by a jury and may not be disturbed if there was any substantial evidence to support them. Enterprise Coal Company v. Phillips, 3 Cir., 84 F.2d 565.

Accordingly there are two questions before us. The first is whether or not there was any substantial evidence to support the finding by the learned trial judge that the transfers were made "in contemplation of death", and the second is whether or not he erred in admitting and rejecting evidence.

A great deal of evidence was produced by the plaintiffs to show that the decedent made the transfers to supply the needs of his children and their families and to give them "every advantage" which he felt they should have. After reviewing the evidence the learned trial judge in his opinion said:

"The sole issue involved in this case is one of fact, i. e., were the gifts of April 4, 1932, made in contemplation of death?

"The assessment by the Commissioner established a prima facie case of liability, for the presumption is that taxes paid are rightly collected upon assessments correctly made by the Commissioner. Therefore, in a suit to recover them, the burden rests upon the taxpayer to prove all the facts necessary to establish the illegality of the collection: United States v. Rindskopf, 105 U.S. 418, 422, 26 L.Ed. 1131; United States v. Anderson, 269 U.S. 422, 443, 46 S.Ct. 131, 70 L.Ed. 347; Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184; Niles Bement Pond Company v. United States, 281 U.S. 357, 361, 50 S.Ct. 251, 74 L.Ed. 901; McCaughn v. Real Estate Co., 297 U.S. 606, 56 S.Ct. 604, 80 L. Ed. 879.

"We have fully considered the evidence in this case, having in mind the principles governing the determination of whether or not a gift inter vivos is made 'in contemplation of death' as announced by the Supreme Court in United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867; and have come to the conclusion that not only have the plaintiffs failed to meet the burden of proof imposed upon them to show the gifts in question were not made 'in contemplation of death', but, on the contrary, we are of the opinion that the evidence taken as a whole established the dominant motives for

[1] The pertinent part of the statute under which the tax was assessed provides as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death;

\*   \*   \*   \*   \*   \*

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth." Revenue Act 1926, c. 27, § 302(a, c), 44 Stat. 9, 70, 26 U.S.C.A. § 411(a, c).

those gifts were death-motives, and not life-motives."

In support of this conclusion he found the following specific facts:

"10. The decedent had not been actively engaged in business for many years preceding the transfers of April 4, 1932. By January 1, 1932, his activities and interests had been so curtailed on account of increasing bodily infirmities that it could be said of him that under the watchful care of nurses and doctors he was gently but surely drifting to the inevitable end which loomed before him.

"11. When he made the transfers which are the subject of this law suit, the decedent was over 97 years of age. Although the evidence does not show that the decedent was suffering from any particular organic disease on or about April 4, 1932, it does establish that on April 4, 1932, as the result of over 97 years of living, the decedent's energy and vitality were reduced to the point where he was prone to engage in only the absolute minimum of physical and mental activity. His routine of living, the continuous attendance of a nurse, and the physical examinations two or three times a week by doctors clearly indicate that the decedent fully realized that, while death might not be imminent, still, in the ordinary course of nature, it might occur at any time, and could not long be delayed.

"12. On April 4, 1932, all of the sons and daughters of the decedent were financially secure; all of their children were then reared and educated and the financial needs of the decedent's sons and daughters were then decreasing and not increasing.

"13. Immediately before the making of the gifts on April 4, 1932, the testator was aware of legislation then pending in Congress to bring about substantial increase in estate taxes.

"14. Under the terms of the decedent's will, which was unrevoked on April 4, 1932, and under the terms of the last will which was executed on April 6, 1932, the donees of the gifts of April 4, 1932, would have succeeded to the property which was the subject of the gifts in substantially the same proportion and under the same conditions as they did under the transfers.

"15. The trust instruments and other gifts of April 4, 1932, and the last will of April 6, 1932, were parts of what was practically a single transaction, and when the gifts were arranged for and made, the decedent had in contemplation his own death just as much as when he arranged for and executed his last will and testament.

"16. The gifts which are the subject of this suit were motivated by the same considerations that lead to testamentary dispositions; they were intended as substitutes for testamentary dispositions; they were motivated in part, at least, by a desire to reduce the amount of estate taxes that would be payable out of the decedent's estate after his death.

"17. The transfers made by the decedent on April 4, 1932, being those more specifically described in finding of fact No. 5 were not bona fide sales for an adequate and full consideration in money or money's worth, and were gifts made by the decedent in contemplation of his death."

■■ There was testimony which tended to prove each of these evidentiary facts found by the trial judge. We cannot say that they are not substantial and that they do not support his conclusion, the final fact, based upon the evidentiary facts, that the transfers were made "in contemplation of death." Such facts as that the trust agreements of April 4, 1932, and the last will and testament made two days later, April 6, 1932, were almost identical in language, were considered together and prepared by the same attorneys, witnessed by the attorneys, both executed at the decedent's home, the property under the transfers and the will passed to the same persons, in the same proportions and subject to the same conditions, justify the conclusion that both instruments were actuated by the same motives. The plaintiffs point to the testimony which, if credible, would support a different conclusion. But the credibility of witnesses and the weight of testimony were for the determination of the trial judge who saw and heard the witnesses and his determination is binding upon us. Camden Woolen Co. v. Eastern S. S. Lines, Inc., 1 Cir., 12 F.2d 917; Conn v. Roos, 5 Cir., 14 F.2d 64; Jones v. Jones, 9 Cir., 35 F.2d 943; Allen v. Collins, 8 Cir., 52 F.2d 708, 709.

■ The burden was on the plaintiffs to establish by a fair preponderance of the evidence that the transfers were not made "in contemplation of death", United States v. Rindskopf, 105 U.S. 418, 26 L.Ed. 1131; Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184; Niles Bement Pond Company v. United States, 281 U.S. 357, 361, 50 S.Ct. 251, 74 L.Ed. 901; and the trial court found that they had not borne

that burden. We can not say that it erred in finding, not that the decedent felt that death was imminent, but that the thought of death was the impelling cause of the transfers. United States v. Wells, 283 U.S. 102, 118, 51 S.Ct. 446, 75 L.Ed. 867; Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772; McCaughn v. Real Estate Co., 297 U.S. 606, 56 S.Ct. 604, 80 L.Ed. 879.

The second question is whether or not the trial judge erred in ruling on the admissibility of evidence.

■ Mr. Charles Oliver, son of the decedent, and one of the executors of his estate, was asked if he knew what the incomes of John Cunningham Oliver and David B. Oliver, grandsons of the decedent, were for the year 1931. The plaintiffs objected to this on two grounds: first, that it was too remote from the date of the transfers on April 4, 1932, and, second, that these donees were grandchildren and not children. It was the children, the plaintiffs contend, about whose growing needs, and about whose "every advantage", the decedent was concerned.

In the second amended statement of claim the plaintiffs alleged that the decedent at the time the transfers were made had six children living, four daughters and two sons, and two grandsons; that the expenses of his daughters were increasing as their children were growing up and their income from investments had been greatly reduced by the cutting off or reduction of dividends and interest, and that his "sons were in need of increased income because of reduction or cutting off of dividends and interest"; that "the family life of the decedent was extraordinarily close and decedent was proud of his children, *their families* and activities, and had expressed himself to them as desirous of giving them every advantage"; and that it was because of these facts alone that the decedent made the transfers.

There is nothing in the evidence when read as a whole that would confine the growing needs of the children to the period of 1932, just before the transfers were made, as plaintiffs seek to do. Their income for 1931 was material to the inquiry and was not too remote, especially in view of the fact that the witness had testified that the growing needs and the reduction in income prompted the decedent to make the transfers.

The decedent was interested not only in his children, but also in "their families", and "their families" included the grandsons of a deceased son, in whom he was interested, to whom he wanted to give "every advantage" and to whom he made transfers.

We think that no error was committed in overruling the objections and in admitting the evidence.

■ We also think that the court did not err in admitting the New York Times of March 6, 8, 22 and 23, 1932, and the Pittsburgh Post-Gazette of March 23, 1932. The evidence showed that the decedent habitually read these papers which contained articles relative to the proposed increase by Congress of estate taxes.

■ The only other assignment of error was to the refusal of the court to allow the witness to answer the following question asked by plaintiffs' counsel: "Did you have any talk with Mr. Oliver concerning the avoidance of taxes, and if so, what was that talk, and when was it, and where was it." The objection was sustained because the witness could not say whether his talk with the decedent, if any, was before or after the transfers on April 4, 1932.

We do not find any reversible error committed by the learned trial judge and the judgment is affirmed.

BUFFINGTON, Circuit Judge (dissenting).

The test of tax liability in these cases is stated in the case of United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 452, 75 L.Ed. 867, where the Chief Justice said: "If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. Such transfers were made the subject of a distinct gift tax, since repealed."

In the present case the testator had made gifts to his children which gave them an income commensurate with the status of living he desired for them. Thereafter he made a will by which the residue of his estate was bequeathed to them. With the depression the income of some of his children was depleted below this level. To provide for such depletion during his own life he made gifts to his children to restore their incomes to an ante-depression status. In doing so, to use the words of the Supreme Court, "the thought of death" was not the "controlling motive", but the desire to counteract the national depression.

These gifts made advisable some minor changes in his earlier will and a new will was made at the suggestion of the trust officer. His gift to his children was not in contemplation of his death but to provide adequate income for them during his remaining years—a natural and laudable motive in a considerate parental heart.