## BOLANDER et al. v. GODSIL et al.
### No. 9374.

Circuit Court of Appeals, Ninth Circuit.

Dec. 30, 1940.

438

J. C. Winter, of Fairbanks, Alaska, for appellants.

Charles E. Taylor, of Fairbanks, Alaska, and Lillick, Geary, Olson & Charles and Edwin L. Gerhardt, all of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Appellee Godsil brought this suit to impress a trust on, and for a declaration that she was the owner of, the property in the estate of William W. Sharrard, deceased, and obtained a decree in her favor.

She alleged in her bill that about December 15, 1936, deceased was about 70 years old, had suffered two strokes of paralysis, and entered into a contract with Godsil, by the terms of which Godsil was to look after, care for and nurse deceased and act as his general housekeeper, and deceased was to bequeath and devise all his property to Godsil by will, in payment for Godsil's services. On January 2, 1937, deceased made his will bequeathing and devising all his property to Godsil. Godsil performed her part of the agreement until about June 20, 1937, when deceased was re- moved to a hospital. On the following day deceased made another will bequeathing $350 to Godsil, and bequeathing and devising all the remainder of his property to appellants, who were unrelated to deceased. Deceased died at the hospital on July 13, 1937.

The answer consisted only of denials. The trial court, in general, found in favor of Godsil, and among other things found that on December 15, 1936, deceased "promised and agreed to and with said [Godsil] that he would make and execute his last will and testament in her behalf and would leave all of his property to her when he died". No exception to this finding was taken by appellants. The trial court concluded that Godsil was the owner of all property in the estate, and that deceased was estopped to bequeath and devise his property to anyone except Godsil. Decree to that effect was entered on June 9, 1939. On September 6, 1939, appellants moved to amend the findings so as to show a want of mutuality in the contract made by Godsil and deceased. The motion was overruled on September 8, 1939, on which day the petition for appeal from the decree of June 9, 1939, was allowed.

There are two assignments of error. The first is that the court erred in denying the motion to amend the findings, and the second is that the court erred in making its conclusion of law that Godsil was the owner of the property in question. Appellee contends that neither question argued—there being only two—may be considered because of certain technicalities, which we do not mention, for the reason that most of them are applicable only to actions at law.

The first question argued is that the trial court's finding above quoted is not supported by the evidence. Godsil testified that deceased told her that he might live a month, a year, or ten years, but that whoever took care of him would get everything he had; that she told deceased that she would not give up her job unless he put his statement in writing; that deceased agreed; that she moved into deceased's house on December 15, 1936; and that on January 2, 1937, deceased called his attorney, who came to his residence, and then deceased told the attorney that he had to have someone take care of him, that Godsil had promised to do so, and that he wanted her to have all his property upon his death. She also testified: "I

didn't go up to the house till the 15th, but I did all his errands after the first. I was supposed to go back to the Hospital on the first, but I got a leave of absence. Then in case I didn't get along with him I had a leave of absence. We moved up there the 15th."

Deceased's attorney testified that deceased told him that he wished to make a new will in favor of Godsil, and

"Q. Do you remember what was said by [deceased] at the time of these instructions to make this will? * * * A. No, other than just to make her the beneficiary.

"Q. Was there anything said about her taking care of him? A. I asked him why he wanted to change his will, and he said because she had been kind to him, and he was going to make it in consideration of kindness and friendship. I remember that."

Dr. Carter, who attended deceased, testified as follows: " * * * in a conversation one evening, while we were talking over his life expectancy and he felt that he was nearing the end and nothing could be done for him more than it be seen that he be made comfortable and happy during the last days of his life, he stated to me that he had engaged Mrs. Godsil's services; that he had engaged her to take care of him the remainder of his life, whether that period was one month or twenty years; that he had no relatives living and that for that consideration he had willed her his property."

There was no evidence directly contrary to the foregoing. Appellant relies on the following circumstances and facts to negative the existence of the contract: That Godsil did not wait until a written contract was prepared before commencing to perform her duties; that the attorney did not know of such a contract; that the attorney was not requested to draw such a contract when he was requested to draw the will; that the will said nothing of a contract and Godsil made no objection thereto on that ground although she heard the will read twice; that Godsil knew the will "must have been a very weak contract because she knew one was destroyed when the said will of January 2 was made to her"; that deceased never divested him-

self of his property in any manner because he retained deeds, collected rents and kept the money, paid the taxes, had full control of his money in the bank, and bequeathed $350 to Godsil in his will made June 21st.

Assuming that these facts and circumstances tend to negative the existence of the alleged contract, the question was decided by the trial judge by weighing the evidence. This is a suit in equity.[1] In our examination of the evidence, the findings of the chancellor on conflicting evidence are presumptively correct and will not be set aside unless a serious mistake of fact or law appears. National Reserve Ins. Co. v. Scudder, 9 Cir., 71 F.2d 884; United States ex rel. Charley v. McGowan, 9 Cir., 62 F.2d 955, 957, affirmed 290 U.S. 592, 54 S.Ct. 95, 78 L.Ed. 522; Clements v. Coppin, 9 Cir., 61 F.2d 552, 558; Exchange National Bank v. Meikle, 9 Cir., 61 F.2d 176, 179; Jones v. Jones, 9 Cir., 35 F.2d 943, 945; Easton v. Brant, 9 Cir., 19 F.2d 857, 859; Gila Water Co. v. International Finance Corp., 9 Cir., 13 F.2d 1, 2. Considering the evidence as conflicting, the presumption of correctness attending the findings requires us to sustain them.

The other question presented is that the court below erred in refusing to make a finding that there was a want of mutuality in the contract. Considered from a standpoint as to manifestation of assent to deceased's offer, it is clear that whatever may have been Godsil's secret intention, her acts in looking after deceased manifested an acceptance of the offer. The secret intention of Godsil was, therefore, immaterial. 1 Restatement of the Law, Contracts, p. 25, § 20; 17 C.J. S., Contracts, p. 361, § 32. However, if appellants contend that there was no promise by Godsil, and therefore no consideration for the contract, there are two answers to such contention. The first is that acceptance of the offer by manifestation of assent shows Godsil's promise. The other answer is that want of mutuality is immaterial since the contract was executed. 17 C.J.S. Contracts, p. 448, § 100.

Appellants rely on Rose v. Oliver, 32 Or. 447, 52 P. 176; Mathews v. Tobias, 101 Or. 605, 201 P. 199; Brown v. Garten,

[1] The Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, do not apply to causes in Alaska. Note 2, Rule 1, Notes to such rules prepared by the Advisory Committee.

89 Iowa 373, 56 N.W. 536, 537; Cessna v. Miller, 85 Iowa 725, 51 N.W. 50; and Davis v. Hendricks, 99 Mo. 478, 12 S.W. 887. The second case cited is not in point because it deals with the statute of frauds. In the last three, the evidence was considered insufficient to show the making of promises by the decedents and are, therefore, not in point. The first case cited bears on the narrow point urged, but we think it holds, so far as is pertinent here, that the acts of the claimant when considered in the light of other inconsistent acts, were insufficient to manifest an assent to the terms of the offer. The evidence in the latter case was entirely different from that here.

Affirmed.